ALLIEDSIGNAL, INC., A.P. Green Industries, Inc., A.W. Chesterton, Inc., Armstrong World Industries, Inc., Asbestos Claims Management Corp., Asbestos Insulating & Roofing, Bondex International, Inc., Borg–Warner Corp., Brake Materials & Parts, Carlisle Corp., Chrysler Corp., Congoleum Corp., Crane Co., Dana Corp., Firestone Tire & Rubber Co., Flexitallic Gasket Co., Flintkote Co., Ford Motor Co., Gaf Corp., Garlock, Inc., General Motors Corp., General Refractories Co., Georgia–Pacific Corp., Hausman, Kaiser Aluminum & Chemical Corp., Kaiser Gypsum Co., Inc., Kelsey–Hayes Co., Lear Siegler Diversified Holding Corp., Mack Trucks, Inc., Mohawk Mfg. & Supply Co., Moog Automotive, Inc., Moog Automotive, McCord Gasket Co., Muncie Reclamation, Navistar International Transportation Corp., Northrup Grumman Corp., Nuturn Corp., Owens Corning, Owens–Illinois, Inc., Pneumo Abex Corp., Rapid American, Rayloc Co., U.S. Gypsum Co., Uniroyal, Inc., Vellumoid, Inc., W.R. Grace & Co.–Conn., Appellants (Defendants Below),

v.

Shirley OTT, Appellee
(Plaintiff Below).

No. 02S04–0111–CV–599.

Supreme Court of Indiana.

March 25, 2003.

Michael A. Bergin, Julia Blackwell Gelinas, Daniel M. Long, Indianapolis, IN, Attorneys for AlliedSignal, Inc.

R. Troy Mulder, Janelle K. Linder, Indianapolis, IN, Attorneys for McCord Gasket Co.

Douglas King, James M. Boyers, Indianapolis, IN, Attorneys for Bondex International, Inc.

Donald Orzeske, Jennifer Blackwell, Indianapolis, IN, Attorney for Borg–Warner Corp.

Knight Anderson, Indianapolis, IN, Attorney for A.W. Chesterton.

Monika Talbot, Indianapolis, IN, Attorney for Ford Motor Co.

Jon L. Williams, Indianapolis, IN, Janet E. Golup, Philadelphia, PA, Attorneys for Amicus Curiae Asbestos Corporation Limited and Bell Asbestos Mines, Ltd.

George T. Patton, Jr., Stephanie F. Holtzlander, Bryan H. Babb, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Legal Foundation.

Michael R. Fruehwald, Andrew J. Detherage, Shelese Emmons, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Manufacturers Association and Indiana Chamber of Commerce.

Neal Lewis, Orland, IN, Robert E. Paul, Philadelphia, PA, Attorneys for Appellee.

## ON INTERLOCUTORY APPEAL

SULLIVAN, Justice.

Our state legislature has prescribed general rules governing lawsuits alleging injuries caused by products and special rules in asbestos cases. This opinion analyzes the interaction of these rules and their constitutionality.

### Background

Jerome Ott was diagnosed with lung cancer in August 1998. He and his wife, Shirley Ott, filed suit against Defendants, alleging that his lung cancer had been caused by exposure to asbestos-containing products while he was employed at the following times and locations: American Supply (1949–51); International Harvester (1951–53); Transport Motor Express (1953–54); and Jerry Ott Motors (1955–

83). Jerome Ott died in January 2000. The complaint was then amended to allege that his death had been caused by the same exposure to asbestos.

The Indiana General Assembly has enacted two statutes that limit the period of time within which persons can file lawsuits alleging injuries caused by products. One of these statutes, Ind.Code § 34–20–3–1, generally applies to product liability claims; we will refer to this statute in this opinion as "Section 1." The second statute, Ind.Code § 34–20–3–2, specifically applies to at least some asbestos liability claims; we will refer to it as "Section 2." (We note that prior to recodification in 1998, Sections 1 and 2 appeared at Ind.Code § 33–1–1.5–5 and § 33–1–1.5–5.5, respectively.)

This opinion will parse these sections in some detail. For purposes of this *Background* section, it is sufficient to say that Section 2 gives plaintiffs more leeway in filing claims than does Section 1. The Defendants in this case argue that Section 2 only applies to a limited class of defendants and that they are not within that class. As such, they contend, the Otts must proceed against them under the more restrictive Section 1. The Otts respond that Section 2 allows them to proceed against these Defendants and that if it does not, then Section 1 violates Indiana Constitution art. I, § 12,[1] as applied to asbestos plaintiffs, and Section 2 violates art. I, § 23.[2]

The trial court agreed with the Defendants that Section 2 did not apply to them but then agreed with the Otts that because it did not, Section 1 was unconstitutional.

Defendants then secured certification from the trial court of this interlocutory appeal. We held an extended oral argument on May 16, 2002.

At the same time that this case was proceeding, four other cases raising the same constellation of issues were presented to us. *Harris v. A.C. & S., Inc.,* 766 N.E.2d 383 (Ind.Ct.App.2002); *Jurich v. Garlock, Inc.,* 759 N.E.2d 1066 (Ind.Ct. App.2001); *Allied Signal, Inc. v. Herring,* 757 N.E.2d 1030 (Ind.Ct.App.2001); *Black v. ACandS, Inc.,* 752 N.E.2d 148 (Ind.Ct. App.2001). In three of these cases, the respective panels of the Court of Appeals held that Section 2 applied to the defendants and so did not have to reach the constitutional issue. *Harris,* 766 N.E.2d at 391; *Herring,* 757 N.E.2d at 1035–37; *Black,* 752 N.E.2d at 154–55. In *Jurich,* the Court of Appeals panel found that Section 2 did not apply to the defendants but it found Section 1 unconstitutional. *Jurich,* 759 N.E.2d at 1070–74, 1077. In summary, the plaintiffs prevailed below in all five of these cases—in three on statutory grounds and in two on constitutional grounds.

Finding that the trial court in this case and the Court of Appeals in *Harris, Jurich, Herring,* and *Black* incorrectly analyzed these issues at least in part, we have accepted jurisdiction in each. (We resolve *Harris,*[3] *Jurich,*[4] *Herring,*[5] and *Black*[6] in separate opinions today.)

---

**1.** Ind. Const. art. I, § 12 provides in part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

**2.** Ind. Const. art. I, § 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

**3.** *Harris v. A.C. & S.,* 785 N.E.2d 1087 (Ind. 2003).

**4.** *Jurich v. Garlock, Inc.,* 785 N.E.2d 1093 (Ind.2003).

**5.** *AlliedSignal, Inc., et al. v. Herring,* 785 N.E.2d 1090 (Ind.2003).

**6.** *Black v. A.C. & S., Inc.,* 785 N.E.2d 1084 (Ind.2003).

*Discussion*

We will work our way through the statutory issues, turn to the two state constitutional claims, and then finish with a discussion of our Court's decision in *Covalt v. Carey Canada, Inc.,* 543 N.E.2d 382 (Ind. 1989).

I

Section 1 provides:

[A] product liability action must be commenced:

> (1) within two (2) years after the cause of action accrues; or

> (2) within ten (10) years after the delivery of the product to the initial user or consumer.

However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Section 1(b). Section 2 excepts certain asbestos-related actions from the operation of Section 1's ten-year statute of repose. A product liability action based on personal injury, disability, disease, or death resulting from exposure to asbestos may be commenced within two years after the action accrues, without regard to the ten-year statute of repose. Section 2(a). For purposes of this section, "accrual" is defined as the date when the injured person knows that he or she has an asbestos-related disease or injury. Section 2(b). The exception applies only to:

> (1) persons who mined and sold commercial asbestos; and

> (2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related dis-ease claims or asbestos related property damage claims.

Section 2(d).

In summary, the Indiana legislature has outlined the specific time requirements for at least some asbestos-related negligence actions in Section 2, a section distinct from the statute of limitations and period of repose for all other product liability actions outlined in Section 1. While product liability actions under Section 1 have a two-year statute of limitations and a ten-year statute of repose, asbestos-related actions under Section 1 enjoy a different timetable. When a product liability action qualifies under Section 2, there is no firm statute of repose. Rather, a lawsuit must be commenced within two years "after the cause of action accrues," which is defined as "the date when the injured person knows that the person has an asbestos related disease or injury." Sections 2(a) & (b).

The crucial language for our purposes arises in Section 2(d)(1). There the Legislature provided that Section 2 only applies if the defendant is a "person[ ] who mined and sold commercial asbestos." Defendants who do not fall within this classification are entitled to the protection offered by the ten-year statute of repose in Section 1. As such, Defendants argue vigorously that they are not "persons who mined and sold commercial asbestos"; the Otts argue that Defendants are.

■ When reviewing a statute, courts give effect and meaning to every word. *Spaulding v. Int'l Bakers Servs., Inc.,* 550 N.E.2d 307, 309 (Ind.1990). This Court's primary goal when construing the meaning of a statute is to determine the Legislature's intent. *Smith v. State,* 675 N.E.2d

693, 696 (Ind.1996), *appeal after remand,* 695 N.E.2d 909 (Ind.1998) (citing *Freeman v. State,* 658 N.E.2d 68, 70 (Ind.1995)). Given such deference to legislative intentions, an unambiguous statute is interpreted to mean what it plainly states, and its plain and obvious meaning may not be enlarged or restricted. *Ind. Dep't of State Rev. v. Horizon Bancorp,* 644 N.E.2d 870, 872 (Ind.1994).

## A

We focus first on the expression "persons who mined and sold." The Defendants argue that to fall within this class of defendants, a person must *both* mine *and* sell. According to the Defendants, because none of them mine asbestos, they do not fall within this class. Prior to *Black,* this was the position taken by several panels of the Court of Appeals and by now-Chief Judge McKinney. *Novicki v. Rapid–American Corp.,* 707 N.E.2d 322, 324 (Ind.Ct.App.1999); *Sears Roebuck and Co. v. Noppert,* 705 N.E.2d 1065, 1068 (Ind.Ct. App.1999), *trans. denied,* 726 N.E.2d 300 (Ind.1999); *Roberts v. A.C. & S., Inc.,* 1998 U.S. Dist. LEXIS 22635, at \*12–13 (S.D.Ind.1998). The Otts make several arguments in response.

First, they say that it is more likely that the Legislature meant the phrase to be read "persons who mined and persons who sold" than "persons who both mined and sold." This is in part because the latter reading renders the words "and sold" superfluous since it is unlikely that there are any entities that mine but do not sell asbestos.

Second, the Otts argue that Section 2 was clearly enacted in recognition of the long latency period associated with asbestos-related illnesses. It is inconsistent with that recognition, they contend, to limit claims to the relatively few companies that both mine and sell asbestos, exempting all others that disseminate asbestos and asbestos-containing products into the marketplace.

Third, the Otts maintain that the Defendants' interpretation of "persons who mine and sell" cannot be harmonized with subsection (d)(2), quoted *supra,* that permits lawsuits initiated outside of the ten-year statute of repose to proceed against "funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims." The Otts argue that the Legislature could not have meant for viable companies that sold asbestos but did not mine it to be excluded from liability, but those same companies, if in bankruptcy with the funds described in section (d)(2), to be subject to claims.

We will withhold resolution of this debate for the moment.

## B

Regardless of the outcome of the mined "and/or" sold debate, a defendant must sell "commercial asbestos" to be subject to Section 2. While the Otts argue that the expression "commercial asbestos" means any asbestos-containing products, we are persuaded by Judge Barnes's analysis on this point in *Jurich:*

"Commercial" has been defined as "[o]f, relating to, or being goods, often unrefined, produced and distributed in large quantities for use by industry." American Heritage College Dictionary 280 (3d ed.2000). Jurich cites us to 40 C.F.R. § 61.141 to support her argument that "commercial asbestos" includes any asbestos-containing product. However, our reading of the entirety of this Environmental Protection Agency regulation leads us to the opposite conclusion. The regulation states that "[c]ommercial asbestos means any material containing asbestos that is extracted from ore and

has value because of its asbestos content." Elsewhere, there are clear indications that the EPA considered "commercial asbestos" to be a bulk product separate from asbestos-containing products, for example: "Fabricating means any processing ... *of a manufactured product that contains commercial asbestos* ...." Id. (emphasis added). Also, "[m]anufacturing means the combining of commercial asbestos ... with any other material(s), including commercial asbestos, *and the processing of this combination into a product.*" Id. (emphasis added). Thus, we agree with *Sears Roebuck and Co. v. Noppert,* 705 N.E.2d 1065, 1068 (Ind.Ct.App.1999), *trans. denied,* to the extent that panel believed "commercial asbestos" did not refer to sellers of "products which contained some components composed of asbestos." Here, the defendants sold asbestos-containing products, not "commercial asbestos," which we conclude refers to either "raw" or processed asbestos that is incorporated into other products. The legislature did not intend [Section 2] to apply to these defendants.

*Jurich,* 759 N.E.2d at 1070–71. *Accord Roberts,* 1998 U.S. Dist. LEXIS 22635, at *11–12.

### C

■ Our resolution of the "commercial asbestos" issue also guides our decision on the mined "and/or" sold issue. While we think that the arguments made by the Otts as to why all sellers, and not just those who are both miners and sellers, are subject to Section 2 are plausible in isolation, when read together with the "commercial asbestos" requirement we reach the opposite result. We think that the language used by the Legislature represents its conscious intent to subject to Section 2 only those persons who produce raw asbestos— "persons who mine[ ] and s[ell] commercial asbestos"—and leave those who sell asbestos-containing products within the ambit of Section 1.

### II

We turn now to an analysis of whether the statutory scheme we have been discussing meets constitutional muster. The Otts contend that, if the statute is construed in the manner we have concluded in part I that it should be, *supra,* it violates both art. I, § 12, and art. I, § 23, of the Indiana Constitution. The trial court agreed.[7]

### A

Our State Bill of Rights famously provides:

All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.

Ind. Const. art I, § 12. As discussed *supra,* Section 1 requires a product liability action to be commenced within ten years after the delivery of the product to the initial user or consumer. The trial court acknowledged that this ten-year "statute of repose" was constitutional on its face, see *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 530, 418 N.E.2d 207, 213 (1981); see also *State v. Rendleman,* 603 N.E.2d 1333, 1336–37 (Ind.1992); but found it to be unconstitutional as applied to the Otts.

In reaching its conclusion, the trial court found our decision in *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999), controlling. In *Martin,* we held that art. I, § 12,

---

7. In *Jurich v. Garlock, Inc.,* 759 N.E.2d 1066 (Ind.Ct.App.2001), the Court of Appeals found the statute violated art. I, § 12, as applied. Id. at 1071–1077. The Court properly found it unnecessary to address art. I, § 23. *Id.* at 1071.

preclude[s] the application of a two-year medical malpractice statute of limitations when a plaintiff has no meaningful opportunity to file an otherwise valid tort claim within the specified statutory period because, given the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action. Stated another way, the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim.

711 N.E.2d at 1284. The trial court found Mr. Ott's situation to be "virtually identical" to that at issue in *Martin:*

> [A]sbestos caused cancer takes between ten (10) and twenty-five (25) years to manifest itself. Even with the utmost amount of diligence Mr. Ott would not have been able to meet the time restrictions of [Section 1]. No one would have. Just like Ms. Martin, Mr. Ott had an accrued claim, albeit unrecognizable, and was "in the position of having the claim but no practical means of asserting it."

(Appellants' App. at 113)(footnotes and citation omitted).

We think that this analysis paints with too broad a brush. In *Jurich,* Judge Barnes begins with a framework for his art. I, § 12, analysis that we think is helpful here:

> There are at least three contexts in which the statute of repose could be considered in this case. First, is the statute constitutional as applied to a plaintiff who is exposed to asbestos from and injured by a product more than ten years after that product's initial deliv-

ery? Second, is the statute constitutional as applied to a plaintiff who is injured by a product within ten years of its initial delivery, but who has neither knowledge of nor any ability to know of that injury until more than ten years have passed? Third, in the absence of evidence of the length of time between a product's initial delivery and an injury ..., can the statute constitutionally be applied to a plaintiff who was injured by a product before [Section 1's] passage?

*Jurich,* 759 N.E.2d at 1071.

We are constrained to observe that the trial court's analysis does not take into account the first of these three scenarios, *i.e.,* where the first exposure to asbestos does not occur until more than ten years after the asbestos-containing product's initial delivery. We see nothing in the trial court's findings that indicate one way or the other when the plaintiff's first exposure to asbestos occurred relative to the asbestos-containing product's initial delivery. In the event that this period exceeded ten years, the relevant defendants would be protected by the statute of repose. Application of the statute of repose would be constitutional under art. I, § 12: the plaintiff would be in exactly the same position as the plaintiff injured in the plane crash in *Dague* or by the loader in *McIntosh v. Melroe Co.,* 729 N.E.2d 972 (Ind. 2000), both cases where the statute of repose was upheld.

We have a less definitive answer to the second of Judge Barnes's scenarios—where a plaintiff is injured by a product within ten years of its initial delivery, but who has neither knowledge of nor any ability to know of that injury until more than ten years have passed. We agree with the trial court and Judge Barnes that the rule of *Martin v. Richey* is implicated. But it is only implicated where the plain-

tiff's cause of action has accrued within the ten-year period.

Here it is difficult to reconcile science and law. On the one hand, injury for this purpose does not occur upon mere exposure to (or inhalation of) asbestos fibers. There is substantial authority on this point.[8] On the other hand, we recognize that injury may well occur before the time that it is discovered. As Judge Barnes says, "the very point of" *Martin v. Richey* is that the constitution required access to courts where "she could *not* have known or discovered that she was the victim of malpractice within [the applicable] time frame." *Jurich*, 759 N.E.2d at 1074 (emphasis in original).

■ We hold that, with respect to asbestos claims under Section 1, a cause of action accrues at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease. *See e.g., Neubauer v. Owens–Corning Fiberglas Corp.*, 686 F.2d 570, 577 (7th Cir.1982) (A "cause of action accrues when the asbestos-caused disease becomes diagnosable—e.g., provable by medical evidence in court."). In this regard, we disapprove Judge Barnes's and the trial court's formulations to the extent that they hold that a cause of action accrues when exposure to asbestos occurs even though a disease does not manifest

itself until many years later. In our view, it is only when the disease has actually manifested itself (and therefore could be diagnosed by a reasonably experienced physician) that the cause of action accrues. *Jurich*, 759 N.E.2d at 1075. Thus, *Martin* is implicated only where a cause of action in fact accrues (*i.e.,* a reasonably experienced physician could have diagnosed the plaintiff with an asbestos-related illness or disease) within the ten-year statute of repose, yet the potential plaintiff had no reason to know of the diagnosable condition until the ten-year period had expired.

Based on the foregoing, the statutory scheme might be unconstitutional as applied to the plaintiff if a reasonably experienced physician could have diagnosed Jerome Ott with an asbestos-related illness or disease within the ten-year statute of repose, yet Ott had no reason to know of the diagnosable condition until the ten-year period had expired. We direct the trial court to examine this possibility on remand.

This brings us to the third of Judge Barnes's scenarios—whether, in the absence of evidence of the length of time between a product's initial delivery and an injury, Section 1 can be constitutionally applied to a plaintiff who was injured by a product before Section 1's passage. Judge Barnes argues that such a plaintiff had a

---

**8.** *See Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28, 30 (Ct.App.1987) (citing *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 942 (3d Cir.1985), *cert. denied*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985)) ("[S]ubclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law."); *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 542 (Me.1986) ("[I]nhalation alone is insufficient to give rise to [a judicially recognizable] claim.... The actionable harm is the manifestation of disease in the body, not

the exposure to the potentially hazardous substance...."); *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 237 (1996) ("[A]symptomatic pleural thickening is not a compensable injury which gives rise to a cause of action.... [N]o physical injury has been established that necessitates the awarding of damages...."); *Locke v. Johns–Manville Corp.*, 221 Va. 951, 275 S.E.2d 900, 905 (1981) ("Simply put, legally and medically there was no injury upon inhalation of defendants' asbestos fibers."). To the extent that *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind. 1989), holds to the contrary, it is overruled.

vested right to pursue such a claim that the Legislature could not take away.

Justice Boehm's plurality opinion in *McIntosh* discussed the power of the Legislature to abolish common law remedies. His opinion conclusively demonstrates, we believe, the Legislature's power to do so and we will not repeat his analysis here. *See McIntosh*, 729 N.E.2d at 977–78. But Judge Barnes acknowledges this and makes a slightly different point. The "key distinction," he says, is that the asbestos plaintiff in *Jurich* had "a vested right, not in a rule of common law in the abstract, like the McIntoshes, but because he had been injured by defendant's products at a time when Indiana courts recognized common law product liability actions without an equivalent to the later-enacted ... statute of repose and thus without reference to the length of time a product had been in the stream of commerce." *Jurich*, 759 N.E.2d at 1076.

■ First, we point out that the statute of repose has been in effect since July 1, 1978. *See* 1978 Ind. Acts. 141, § 28. Even if Judge Barnes is correct, a cause of action would have to accrue (*i.e.*, a reasonably experienced physician would have to have been able to diagnose an asbestos-related illness or disease) before July 1, 1978, for his distinction to make a difference.

But, second, a plaintiff's right to pursue such a claim may in some circumstances be subject to changes in common law or statute. For example, a plaintiff's ability to assert products claims was expanded under the common law, *see, e.g., Cornette v. Searjeant Metal Prods., Inc.*, 147 Ind.App. 46, 258 N.E.2d 652, 656 (1970) (adopting Restatement of Torts (Second) § 402A), and we have held it within the purview of the Legislature to modify or abrogate that expansion. *McIntosh*, 729 N.E.2d at 977–78.

Art. I, § 12, provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, ... shall have remedy by due course of law." Section 1, as we have previously held, does not violate this provision. Furthermore, asbestos plaintiffs have additional remedies under Section 2 where they may pursue miners and sellers of commercial asbestos[9] and asbestos bankruptcy funds without regard for Section 1's statute of repose.[10] Thus, even if an asbestos plaintiff's claim would not accrue within the normal ten-year period of repose, courts remain open under Section 2.

## B

The trial court also found the statute of repose violative of Indiana Constitution art. I, § 23, which provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the

---

9. A plain reading of the text of the statute demonstrates that plaintiffs who are injured by asbestos released from asbestos-containing products may still pursue the original entity that mined and sold the raw asbestos used to make the asbestos-containing product even if they are no longer able to pursue the manufacturer of the product. The use of "asbestos" in Section 2(a) demonstrates that all asbestos-victims potentially have claims that fall under the exception since all were injured by asbestos, whether in its raw form or released from a manufactured product. Thus, both groups have product liability claims that may fall under Section 2, provided the defendants in the respective actions are miners and sellers of the original, raw asbestos.

10. One amicus argues that asbestos plaintiffs have additional remedies under the Worker's Occupational Diseases Compensation Act, Ind.Code § 22–3–7–2, and the Residual Asbestos Injury Fund, Ind.Code § 22–3–11–1. *See* Br. of Amicus Curiae Indiana Legal Foundation at 19–22. As we read these materials, however, these remedies seem modest at best.

same terms, shall not equally belong to all citizens.

In determining whether a statute complies with or violates this provision, we use the two prong test set out in *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994). However, before we can determine whether the legislative classification is permissible under this test, we need to identify the legislative classification at issue. We think the constitutional claim here, reduced to its essentials, is that asbestos victims in Indiana are bound by the statute of repose governing product liability actions when suing particular categories of defendants but are not so constrained when suing others. Thus, the statute creates a distinction between asbestos victims and other victims under the product liability act.

■ While it is true that such a distinction is created, we find it unnecessary to determine whether the distinction is constitutionally permissible because the classification resulting from the distinction of which the plaintiffs complain, as we have seen, works in favor of asbestos plaintiffs.[11] *See Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 347–48, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation. . . . The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits."). Asbestos plaintiffs are subject to the same statute of repose as other products liability claims with respect to all defendants other than persons who mine and sell commercial asbestos and certain bankruptcy funds. With respect to the latter two classes of defendants, asbes-

tos plaintiffs are not subject to a statute of repose at all. To the extent there is any art. I, § 23 defect, asbestos plaintiffs do not suffer any cognizable harm.

### III

We believe we should conclude with a brief discussion of *Covalt v. Carey Canada, Inc.,* 543 N.E.2d 382 (Ind.1989). In *Covalt,* this Court held that Section 1 did not apply to asbestos cases given the long latency periods for asbestos-related diseases and a resulting inability to discover the injury prior to the expiration of the period of repose. *Id.* at 385–87.

Section 2 was adopted by the Legislature while *Covalt* was pending, *i.e., Covalt* was decided under prior law. *Id.* at 383 n. 1. The rationale for the *Covalt* opinion was that the Court "[could not] say that the Legislature intended the ten year statute of repose to bar claims such as this one, where the injury is the result of protracted exposure to a hazardous foreign substance." *Id.* at 386. The adoption of Section 2 renders that analysis obsolete.

In addition, there are key factual differences between *Covalt* and the present case. *Covalt* involved a plaintiff who worked with raw asbestos. 543 N.E.2d at 383. We stated in *Covalt* that the applicability of the holding in that case was limited to "the precise factual pattern presented," which involved exposure to raw asbestos fibers. *Id.* at 387. Thus, *Covalt* can be read as consistent with the effect of Section 2 in that it relieved asbestos plaintiffs from the statute of repose in a lawsuit against a supplier of commercial asbestos. To the extent that *Covalt* is

---

**11.** One amicus argues that Section 2 is unconstitutional as applied to miners of raw asbestos. See Br. of Amici Curiae Asbestos Corporation Limited and Bell Asbestos Mines, Ltd. at 5–17. No party to the current litiga-

tion is a miner of raw asbestos. Consequently, given that such a claim does not impact any party in the present case, we will not address Section 2's constitutionality as applied to miners at this time.

inconsistent with today's opinion, it is overruled.

*Conclusion*

Having previously granted transfer pursuant to Indiana Appellate Rule 56(A), we now reverse the judgment of the trial court. We remand this matter to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and BOEHM, J., concur. DICKSON, J., dissents with separate opinion, in which RUCKER, J., concurs.

DICKSON, Justice, dissenting.

I strongly disagree with the majority's decision to reverse the trial court's denial of summary judgment in this case. In particular, I believe that the majority is incorrect in: (1) limiting the statutory term "commercial asbestos" to mean only raw asbestos; (2) construing "mined and sold" contrary to legislative intent; (3) failing to find a violation of Article 1, Section 12, of the Indiana Constitution; (4) failing to find a violation of Article 1, Section 23, of the Indiana Constitution; and (5) over-

ruling rather than following *Covalt v. Carey Canada, Inc.*

**1. Commercial Asbestos**

Indiana Code § 34–20–3–2 [12] (hereinafter "Section 2") provides an exemption from the general products liability periods of limitation and repose by generally permitting actions for injuries from exposure to asbestos to be commenced within two years after the injured person knows that he or she has an asbestos-related disease or injury. The majority construes the word "commercial" in subsection (d)(1) to limit Section 2's exception to apply only as to claims against defendants "who produce raw asbestos," but not to allow the delayed filing as to defendants "who sell asbestos-containing products." Maj. Op. at 1073.

In construing a statute, "our primary goal is to determine and effect legislative intent." *Freeman v. State*, 658 N.E.2d 68, 70 (Ind.1995). To give effect to the legislature's intent, we do not consider a statutory provision in isolation but rather consider the statute as a whole and interpret an individual provision so as to harmonize it with other sections of the enactment. *Indiana Dep't of Pub. Welfare v. Payne,*

---

12. Indiana Code § 34–20–3–2 provides:
   (a) A product liability action that is based on:
   (1) property damage resulting from asbestos; or
   (2) personal injury, disability, disease, or death resulting from exposure to asbestos;
   must be commenced within two (2) years after the cause of action accrues. The subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action.
   (b) A product liability action for personal injury, disability, disease, or death resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury.
   (c) A product liability action for property damage accrues on the date when the in-

jured person knows that the property damage has resulted from asbestos.
   (d) This section applies only to product liability actions against:
   (1) persons who mined and sold commercial asbestos; and
   (2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.
   (e) For the purposes of IC 1–1–8, if any part of this section is held invalid, the entire section is void.
   (f) Except for the cause of action expressly recognized in this section, this section does not otherwise modify the limitation of action or repose period contained in section 1 of this chapter.

622 N.E.2d 461, 466 (Ind.1993); *see also Saylor v. State,* 765 N.E.2d 535, 564 (Ind. 2002); *Robinson v. Wroblewski,* 704 N.E.2d 467, 474 (Ind.1998); *Douglas v. State,* 663 N.E.2d 1153, 1156 (Ind.1996); *Hinshaw v. Bd. of Comm'rs of Jay County,* 611 N.E.2d 637, 639 (Ind.1993). "Where statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute." *Robinson,* 704 N.E.2d at 474.

The majority's conclusions in Part I of its opinion are grounded upon its construction of the word "commercial" found in subsection (d)(1) of Section 2. In contrast, however, other provisions in Section 2 demonstrate the legislature's intent to grant Section 2's exemption to all persons injured by exposure to asbestos, regardless of its source. Subsection (a) identifies product liability actions based on "personal injury, disability, disease, or death resulting from exposure to asbestos." Subsection (b) refers generally to any person who "has an asbestos related disease or injury." Section (d)(2) applies to "payment of asbestos related disease claims." These references are in stark contrast to the majority's interpretation of subsection (d)(1) that restricts Section 2's operation to only those persons whose asbestos-related injuries result from exposure to raw asbestos. Considering Section 2 as a whole to ascertain legislative intent does not support the majority's decision to deny the benefit of Section 2 to persons whose asbestos-related injuries result from asbestos-containing products, as distinguished from raw asbestos.

On the other hand, appellate courts generally presume that all statutory language is used intentionally. *Preston v. State,* 735 N.E.2d 330, 333 (Ind.Ct.App.2000). Each word should be "given effect and meaning where possible, and no part of the statute is to be held meaningless if it can be reconciled with the rest of the statute." *Allied Signal, Inc. v. Herring,* 757 N.E.2d 1030, 1035 (Ind.Ct.App.2001). Thus, if possible, and if it can be reconciled with the rest of Section 2, we should infer that the insertion of the adjective "commercial" was likely intended to distinguish defendants who produced "commercial asbestos" from those who produced "asbestos." It is altogether unclear, however, what distinction was intended. The Indiana General Assembly did not define the term "commercial" as used in Section 2.

Even the Court of Appeals opinion that the majority finds persuasive, *Jurich v. Garlock,* 759 N.E.2d 1066 (Ind.Ct.App. 2001), concludes "commercial asbestos" refers to "either 'raw' *or processed asbestos that is incorporated into other products.*" *Id.* at 1071 (emphasis added). The majority quotes the Environmental Protection Agency regulation that defines "commercial asbestos" as *"any material containing asbestos* that is extracted from ore and *has value because of its asbestos content."* Maj. Op. at 1072 (*quoting id., quoting* 40 C.F.R. § 61.141 (emphasis added)). By including processed asbestos incorporated into other products, this is a much broader definition than the majority's view that the term is restricted to raw asbestos only. Maj. Op. at 1073.

I remain convinced that, looking to the whole of Section 2 to determine the legislature's intent, the phrase "commercial asbestos" includes asbestos incorporated into products intended for commerce. To construe "commercial" to limit the Section 2 exception only to claims against producers of raw asbestos is inharmonious and irreconcilable with the remainder of Section 2.

### 2. "Mined and Sold"

Guided by its belief that "commercial asbestos" in Section 2 means "raw asbestos," the majority concludes that the legislature intended Section 2 to permit de-

layed filing only as to claims against persons who both mine and sell raw asbestos. Because the majority's interpretation of "commercial" is questionable, the construction of the phrase "mined and sold" as used in Section 2 becomes critical.

As previously noted, Section 2 provides an exemption from the general products liability periods of limitation and repose by generally permitting actions for injuries from exposure to asbestos to be commenced within two years after the injured person knows that he or she has an asbestos-related disease or injury. Subsection 2(d)(1) states: "This section applies only to product liability actions against ... persons who *mined and sold* commercial asbestos...." (Emphasis added.) The plaintiff urges that the legislature intended the phrase to mean persons who mined *and* persons who sold. The defendant argues that the phrase was meant to limit Section 2 only to actions against persons who *both* mined and sold.

In construing an enactment, the legislative intent will prevail over the literal import of the words. *FGS Enterprises, Inc. v. Shimala,* 625 N.E.2d 1226, 1228 (Ind. 1993). The strict literal or selective meaning of individual words should not be over-emphasized, but rather the intent must be ascertained from the enactment as a whole. *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 970 (Ind.1998). While the literal language favors "both mined and sold," there is compelling evidence that the legislature intended to mean "persons who mined and persons who sold." First, as noted by the majority, interpreting the phrase to mean "both mined and sold" renders the words "and sold" superfluous "since it is unlikely that there are any entities that mine but do not sell asbestos." Maj. Op. at 1072. Second, because the obvious purpose of Section 2 is to provide for fairness due to the long latency period associated with

asbestos-related illnesses, it is inconsistent for it to apply only to claims against the relatively few companies that both mine and sell asbestos, and essentially to preclude actions against all others that disseminate asbestos and asbestos-containing products. Third, the "both mined and sold" interpretation would prohibit delayed filing of actions against solvent companies that sold but did not mine asbestos, but not against such companies in bankruptcy with the funds described in subsection (d)(2). The plaintiff argues that the legislature did not likely intend to thus "immunize solvent companies and place greater burdens on the insolvent ones." Br. of Appellee at 13–14.

In *Black v. ACandS, Inc.,* 752 N.E.2d 148 (Ind.Ct.App.2001), our Court of Appeals thoughtfully addressed the construction of "mined and sold." Writing for the Court, Judge Mattingly–May noted that a reviewing court may "make minor substitutions of words where necessary to give vitality to the legislative intent." *Id.* at 153 (*quoting Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 526, 418 N.E.2d 207, 211 (1981)). She pointed out that the *Dague* court itself, in construing a product liability statute of repose, modified the enacted language by changing the disjunctive "or" to the conjunctive "and" because to literally construe the language would "fl[y] in the face of a clearly contrary legislative intent." *Id.* Judge Mattingly–May persuasively explained:

> The strict literal interpretation urged upon us by the defendants would lead to the illogical result that "asbestos-related actions" were limited to those actions brought against miners of asbestos, and did not include actions against manufacturers and sellers if they did not also mine the product. Because the statute of repose is concerned not with the introduction of the asbestos into the marketplace but with exposure to the haz-

ardous foreign substance that causes disease, an interpretation of the statute that permits or denies recovery based solely on the nature of the entity that introduced the asbestos into the marketplace cannot stand. We believe the legislature could not have intended to permit actions against an entity that both mined and sold asbestos but to preclude actions against entities that introduced asbestos into the marketplace as miners only or as sellers only.

*Id.* at 154 (internal citation omitted). This analysis has since been noted with approval in *Harris v. A.C. & S., Inc.,* 766 N.E.2d 383, 391 (Ind.Ct.App.2002); *Jurich,* 759 N.E.2d at 1069–70; *Herring,* 757 N.E.2d at 1035; *Fulk v. Allied Signal, Inc.,* 755 N.E.2d 1198, 1202 (Ind.Ct.App.2001); *Parks v. A.P. Green, Indus., Inc.,* 754 N.E.2d 1052, 1058 (Ind.Ct.App.2001); and *Poirier v. A.P. Green Services, Inc.,* 754 N.E.2d 1007, 1010 (Ind.Ct.App.2001).

In accord with Judge Mattingly–May's analysis, I am convinced that the legislature intended "persons who mined and sold" to mean "persons who mined and persons who sold."

### 3. Article 1, Section 12

I also believe that Section 2, as construed by the majority, violates the Right to Remedy Clause, Article 1, Section 12, of the Indiana Constitution. The majority finds otherwise, rejecting the trial court's determination that the ten year product liability statute of repose [13] was unconstitutional as applied to the plaintiff. Judge Levine's trial court findings stated:

[A]sbestos caused cancer takes between ten (10) and twenty-five (25) years to manifest itself. Even with the utmost amount of diligence Mr. Ott would not have been able to meet the time restrictions of IC [34–20–3–1]. No one would have. Just like Ms. Martin [in *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999)], Mr. Ott had an accrued claim, albeit unrecognizable, and was in the position of having the claim but no practical means of asserting it.

Appellants' App. p. 113 (footnotes and citation omitted). Because of this long latency period, asbestos-caused cancer usually does not appear until after the ten-year statute of repose. This is precisely the circumstance that led this Court in *Martin v. Richey* to find that application of the medical malpractice two-year statute of limitations to the facts of that case violated Article 1, Section 12, because Martin had "no meaningful opportunity to file an otherwise valid tort claim within the specified statutory period." 711 N.E.2d 1273, 1284 (Ind.1999). We stated:

[G]iven the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action. Stated another way, the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plain-

---

**13.** Indiana Code § 34–20–3–1(b) states:

Except as provided in section 2 of this chapter, a product liability action must be commenced:
 (1) within two (2) years after the cause of action accrues; or

 (2) within ten (10) years after the delivery of the product to the initial user or consumer.
However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

tiff's access to courts and ability to pursue an otherwise valid tort claim.

*Id.* As we explained in *McIntosh v. Melroe Co.,* 729 N.E.2d 972, 979 (Ind.2000), "[t]he holding in *Martin v. Richey* is that a claim that exists cannot be barred before it is knowable." Likewise here, Jerome Ott was diagnosed with lung cancer in 1998 and died in 2000. The plaintiff alleges that his lung cancer was caused by exposure to asbestos at his various places of employment from 1949 through 1983. Because of the unusually long latency period of asbestos-related cancer, it was impossible for Ott to discover that he had contracted a disease from exposure to asbestos within the statute of repose.

The majority observes "nothing in the trial court's findings that indicate one way or the other when the plaintiff's first exposure to asbestos occurred relative to the asbestos-containing product's initial delivery." Maj. Op. at 1074. This fact is irrelevant to our review of the denial of summary judgment. As the proponent of summary judgment, it was the defendant's burden to establish that the action was commenced in violation of the statutory limitation period. *Burks v. Rushmore,* 534 N.E.2d 1101, 1104 (Ind.1989). To succeed on summary judgment, the defendants were required to demonstrate that there was no genuine issue as to any material fact and that Ott could have discovered that he had sustained an injury in time to comply with the statutory limitation period, as required by *Martin.* Even though this Court in *McIntosh* held that "products that produce no injury for ten years are no longer subject to claims under the Product Liability Act," 729 N.E.2d at 979, the defendants failed to demonstrate that the asbestos exposure produced no injury for over ten years. The defendants' failure of proof supports the denial of summary judgment.

In its application of *Martin,* the majority today creates a new definition of "accrues" and declares that, "with respect to asbestos claims under Section 1, a cause of action accrues at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease." Maj. Op. at 1075. Because this omits consideration of when the injured person (as opposed to a hypothetical physician) becomes aware of his or her own injury, today's new definition of "accrues" is wholly contrary to existing law. "[A] cause of action accrues when the resultant damage of a negligent act is ascertainable or by due diligence could be ascertained...." *Burks,* 534 N.E.2d at 1104 (*quoting Barnes v. A.H. Robins Co., Inc.,* 476 N.E.2d 84, 86 (Ind. 1985)). The ascertainability of damage is determined "by evaluation of the nature and circumstances of the information known or reasonably discoverable by [the injured person], beginning at the initial point of his claimed harm." *Id.* at 1104. The legislature itself understands this to be the proper meaning of "accrues." Section 2 explains: "A product liability action for personal injury, disability, disease, or death resulting from exposure to asbestos *accrues on the date when the injured person knows* that the person has an asbestos related disease or injury." I.C. 34–20–3–2(b) (emphasis added).

Therefore, and contrary to the majority, *Martin* is clearly implicated when a person injured by exposure to asbestos did not, and could not by the exercise of due diligence, ascertain that he or she had been damaged by the asbestos, regardless of whether the condition hypothetically might have been diagnosed by a reasonably experienced physician within the ten-year statute of repose. Moreover, for the limitation period to bar the claim, it is a defendants' burden to establish a plaintiff's knowledge

of the asbestos-related injury within the statutory period.

For the reasons expressed in *Martin* and reaffirmed in *McIntosh*, the trial court did not err in finding the product liability statute of repose to violate Article 1, Section 12, as applied to the facts of this case.

### 4. Article 1, Section 23

In response to the plaintiff's contention that the statute of repose violates Article 1, Section 23, of the Indiana Constitution, the majority finds that the plaintiff suffered no cognizable harm and declines to address the issue. This conclusion results from the majority's characterization of the essential claim as creating a constitutional distinction between asbestos victims and other victims under the product liability act. This is not the set of unequally treated classes identified in the plaintiff's appeal. To the contrary, the plaintiff alleges that, with the narrow construction of "mined and sold commercial asbestos" adopted by the majority, the statute of repose unconstitutionally grants unequal treatment to those employees who contract asbestos-related diseases from exposure to raw asbestos in contrast to those whose diseases result from exposure to asbestos-containing products.[14]

Article 1, Section 23, commands: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." This clause prohibits a statute from providing disparate treatment to different classes of persons if: (1) the disparate treatment is not reasonably related to inherent characteristics that distinguish the unequally treated classes, or (2) the preferential treatment is not uniformly applicable and equally available to all similarly situated persons. *McIntosh*, 729 N.E.2d at 981; *Martin*, 711 N.E.2d at 1280; *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994).

There are no inherent characteristics that distinguish workers with asbestos-related diseases caused by exposure to raw asbestos from those with the same diseases brought about by exposure to manufactured products containing asbestos. Thus the unequal treatment accorded to each class cannot be reasonably related to any inherent differences. With the majority's refusal to construe Section 2 to equally treat all persons with asbestos-related diseases, the product liability statute of repose clearly grants to persons whose diseases derive from raw asbestos substantial privileges and immunities that do not equally belong to identically situated persons whose diseases result from asbestos-containing products. The constitutional violation is apparent.

### 5. Covalt v. Carey Canada, Inc.

In *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind.1989), this Court held that the product liability statute of repose did not apply to claims arising out of asbestos-related disease:

> Accordingly, because of the long latency period with asbestos-related diseases, most plaintiffs' claims would be barred even before they knew or reasonably could have known of their injury or disease and they would be denied their day in court if the ten year statute of repose were applied. To require a claimant to bring his action in a limited period in which, even with due diligence, he could not be aware that a cause of action

---

14. As an example, the plaintiff questions the resulting unequal treatment of a worker at one plant making brake linings and who was exposed to asbestos fiber causing cancer and another worker in a different city who contracted asbestos-related cancer caused from his exposure to the brake linings manufactured at the first plant. Br. of Appellee at 17.

exists would be inconsistent with our system of jurisprudence.

*Id.* at 387.

The majority dismisses this holding on grounds that *Covalt* was decided under prior law because the language of Section 2, although then recently adopted, was not applicable to the facts there presented. We noted this fact in *Covalt* and described the effect of the amendment as providing "in pertinent part that an asbestos-related action must be brought within two years of the date when the injured person knows that he has an asbestos-related disease or injury." *Id.* at 383–84 n. 1. The effect of *Covalt* was to determine the application of the statute of repose with respect to asbestos-related claims in a manner quite consistent with that implemented with the legislature's enactment of the ameliorative language of Section 2, allowing access to courts by persons with asbestos-related injuries.

The majority declares that the adoption of Section 2 renders *Covalt*'s analysis "obsolete," Maj. Op. at 1078, because *Covalt* expressly excluded Section 2 from its determination and noted its uncertainty regarding whether the legislature "intended the ten year statute of repose to bar claims such as this one, where the injury is the result of protracted exposure to a hazardous foreign substance." *Covalt,* 543 N.E.2d at 386. The majority's analysis assumes that Section 2 represents the legislature's intent to bar all such claims except those against producers of raw asbestos. However, if Section 2 is read as the *Covalt* court understood it, to provide a humane, fair, and just exception from the statute of repose for *all* persons whose asbestos-related diseases cannot be ascertained within ten years after exposure, the existence of Section 2 in no way renders *Covalt* obsolete.

*Conclusion*

For each of the reasons expressed above, I dissent from the majority.

RUCKER, J., concurs.