## In re The BABCOCK & WILCOX COMPANY, et. al., Debtors.

### The Babcock & Wilcox Company,

v.

### Southern Indiana Gas and Electric Company.

**Bankruptcy Nos. 00–10992 to 00–10995. Adversary No. 03–1065.**

United States Bankruptcy Court, E.D. Louisiana.

Dec. 31, 2003.

---

**64**

Tristan E. Manthey, Heller, Draper, Hayden, Patrick & Horn, New Orleans, LA, for Babcock & Wilcox Co., Debtor.

Emile Turner, Jr., New Orleans, LA, Christian P. Jones, Indianapolis, IN, for Southern Indiana Gas & Electric Co.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter came before the court as a hearing on the motion of Babcock & Wilcox Company's ("B & W" or "Debtor") for summary judgment, and the opposition filed by Southern Indiana Gas and Electric Company ("SIGCO"). For the reasons expressed in the following opinion, the court denies the debtor's motion for summary judgment.

### I.  Background Facts

This matter was initiated, on July 2, 2002, by the debtor's First Omnibus Objection to Asbestos Property Damage Claims ("Objection"). SIGCO's claim was filed on July 28, 2001, and consists of a claim form in an "unknown" amount, marked "Asbestos Property Damages Claim" and with an attached one-page exhibit containing a two-paragraph description of the claim for damages. The objection initially objected to the claim of SIGCO, Claim number

228183, on the basis that the claim lacked any supporting documentation.[1] SIGCO responded to the objection, stating in part that the claim was a "contingent, unliquidated claim" and filed in an unknown amount because "it was unknown to Sigeco whether it had suffered any property damage (directly or indirectly) as a result of acts or omissions of B & W with regard to the asbestos containing products ...."[2]

The matter was converted to an adversary proceeding on March 18, 2003. B & W subsequently filed a supplement objection to the SIGCO claim and a motion for summary judgment, asking that the SIGCO claim be disallowed for several reasons, including (1) the SIGCO claim is barred by the applicable Indiana statute of limitations and/or repose, and (2) 11 USC § 502(e)(1)(B) would bar indirect contingent claims for reimbursement or contribution.

SIGCO responded to the motion for summary judgment stating that the applicable Indiana statute of repose, Ind.Code § 34–20–3–2, provides an exception to the product liability statute of repose, and provides SIGCO with two years from the date SIGCO knew that it has suffered property damage, resulting from asbestos in products manufactured or sold by B & W, to bring its claim. It additionally argues that the claim is contingent in amount only, that SIGCO is not claiming reimbursement or contribution, and therefore its claim is a direct claim against the debtor which can be estimated by the court under section 502.

On November 5, 2003, a hearing was conducted on the motion for summary judgment, and the response by SIGCO. The parties have filed supplemental memo-

---

1.  Pl. 3309.

2.  Pl. 3709.

randa in support of the motion, and in response thereto.

## II. Applicable Law

### (A) Summary Judgment.

Summary judgment is proper when no issues of material fact exist and the moving party is entitled to judgment as a matter of law.[3] The court must view the evidence introduced and all factual inferences in the light most favorable to the party opposing summary judgment.[4] Summary judgment is appropriate where a defense of limitations exists.[5]

### (B) Indiana law regarding limitations.

B & W has asserted that the SIGCO claim is barred under the Indiana construction statute of repose. That statute is found at Ind.Code § 32–30–1–5, and provides in relevant part:

> An action to recover damages, whether based upon contract, tort, nuisance, or another legal remedy, for: (1) a deficiency or an alleged deficiency in the design, planning, supervision, construction, or observation of construction of an improvement to real property; (2) an injury to real or personal property arising out of a deficiency; or (3) an injury or wrongful death of a person arising out of a deficiency; may not be brought against any person who designs, plans, supervises, or observes the construction of or constructs an improvement to the real property unless the action is commenced within the earlier of ten (10) years after the date of substantial completion of the improvement or twelve (12) years after the completion and sub-

mission of plans and specifications to the owner if the action is for a deficiency in the design of the improvement.

B & W's statement of uncontested material facts lists five boilers which were installed for SIGCO. Each boiler was installed more than twenty years ago.[6] B & W reasons, therefore, that SIGCO's claim is barred by the ten-year construction statute of repose.

SIGCO responds that the applicable statute of limitation is the Indiana product liability statute, found at Ind.Code § 34–20–3–1 and 2, which provides in part:

34–20–3–1 Negligence and strict liability in tort actions.

> Sec. 1. (a) This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–11–6–1, this section applies in any product liability action in which the theory of liability is negligence or strict liability in tort.
>
> (b) Except as provided in section 2 of this chapter, a product liability action must be commenced:
>
> > (1) within two (2) years after the cause of action accrues; or
> >
> > (2) within ten (10) years after the delivery of the product to the initial user or consumer.
>
> However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

---

**3.** *Hassan v. Lubbock Independent School Dist.,* 55 F.3d 1075, 1079 (5th Cir.1995); Fed. R.Civ.P. 56(c); Bankruptcy Rule 7056(c).

**4.** *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir.1995).

**5.** *National Property Investors v. Shell Oil Co.,* 950 F.Supp. 710, 712 (E.D.N.C.1996).

**6.** Statement of Uncontested Material Fact, No. 4, pl.15.

34–20–3–2 Asbestos–related actions

Sec. 2. (a) A product liability action that is based on:

(1) property damage resulting from asbestos; or

(2) personal injury, disability, disease, or death resulting from exposure to asbestos;

must be commenced within two (2) years after the cause of action accrues. The subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action.

. . . . .

(c) A product liability action for property damage accrues on the date when the injured person knows that the property damage has resulted from asbestos.

(d) This section applies only to product liability actions against:

(1) persons who mined and sold commercial asbestos; and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

SIGCO argues that its claim is a product liability claim against certain bankruptcy created funds, as found in Ind.Code § 34–20–3–2(d)(2). It asserts that sub-section 2(d)(2) runs from the date SIGCO knew it suffered property damage, that the property damage would result from asbestos in B & W manufactured or sold products, and therefore its claim is not barred.

7.  789 N.E.2d 526 (Ind.Ct.App.2003).

8.  *Id.* at 531.

9.  *Id.*

10.  *Id.* at 532–33.

B & W asserts that the case of *J.M Foster, Inc. v. Spriggs,* 789 N.E.2d 526 (Ind.App.2003)[7] supports its contention that the Indiana construction statute of repose would bar SIGCO's claim for damages. *Spriggs* involved an action brought by the estate of a pipefitter against certain contractors for alleged exposure to asbestos that was installed and removed at the job site. The defendants included mechanical contractors and an engineering and construction company, none of which had ever manufactured or sold asbestos or asbestos containing products. The court ultimately held that the construction statute of repose applied to bar the asbestos related injury.[8] However, it noted that even installers of asbestos may not " 'hide behind' the construction statute of repose when the installers also sold or manufactured the products they had installed."[9] Instead, "the purpose of the construction statute of repose is to protect engineers, architects, and contractors from stale claims and to eliminate open-ended liability for defects in workmanship."[10]

*Spriggs* is distinguishable from the case at hand. *Spriggs* involved a suit against sixty defendants including contractors, who had little to do with the mining, manufacture or sale of asbestos products. In contrast, B & W's role is not merely incidental to the installation of asbestos containing products. Instead, B & W designed and constructed the boilers at issue, using some asbestos containing parts, in addition to their installation.[11] Rather than a remote "installer", B & W's associa-

11.  For instance, this Court has previously found that B & W "designed, constructed and installed asbestos-insulated boilers" at numerous locations. *In re Babcock & Wilcox, Co.,* 274 B.R. 230 (Bankr.E.D.La.2002)(Finding of Fact no. 13, citing Exhibit 1506 and 1507).

tion with the asbestos containing product is more direct.

◼ Additionally, Indiana law provides that where two statutes deal with the same subject matter, the statute which is more recent and specific will prevail over the older and more general one.[12] Ind.Code 34–20–3–2 governs asbestos-related actions and was added to the Indiana statutes in 1998. By contrast, the construction statute governs the "limitations of actions generally" including those based upon contract, tort, nuisance or other legal remedy. The asbestos related statute is more specific, and meant to deal with asbestos-related damages, including the type of asbestos property damage claims asserted by SIGCO.

◼ B & W asserts that the exception found in section 2 of the asbestos statute does not apply in this case, because B & W did not mine *and* sell commercial asbestos. It is true that the Indiana Supreme Court has found that section 2(d)(1), which is an exception to the product liability statute of repose found in Section 1, applies only where a defendant both mined and sold "commercial asbestos". The Indiana court found that "commercial asbestos" does not refer to sellers of "products which contained some components composed of asbestos"; instead, the exception found in section 2 applied only to those who produce raw asbestos and the statute of re-

pose found in section 1 applied to those who sell asbestos-containing products.[13]

This holding, however, does not end the analysis, because section 2 also contains an exception for "funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims."[14] B & W asserts, because the exception is joined by an "and" with the exception for defendants who mine and sell commercial asbestos, it applies only if all three factors are present: i.e., the entity both mined and sold commercial asbestos and bankruptcy funds are present. No Indiana decision could be found directly construing this provision. What authority that can be found suggests that the legislature intended for the exception to the statute of repose to apply in two situations: (1) where the entity mines and sells commercial asbestos, and (2) to certain bankruptcy funds. For example, in *AlliedSignal, Inc. v. Ott*, the Indiana Supreme Court recognized in *dicta* that two classes of defendants are not subject to the product liability statute of repose.[15] Additionally, in another case, the Indiana court recognized that the discovery rule applies only in two limited actions.[16]

B & W asserts that the Indiana construction statute of repose is "strikingly similar" to statutes found in Montana and Minnesota, and that courts in those states have applied the construction statute to bar stale claims against B & W.[17] Howev-

---

**12.** *Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379, 1384 (Ind.App. 2nd Dist. 1990)(and cases cited therein).

**13.** *AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1073 (Ind.2003).

**14.** Ind.Code 32–20–3–2(d)(2).

**15.** *Id.* at 1077.

**16.** *Sears Roebuck and Co. v. Noppert*, 705 N.E.2d 1065, 1068 n. 6 (Ind.App.1999)(the

discovery rule exception also applies to certain bankruptcy funds).

**17.** Supplemental Memorandum in Support of Summary Judgment, pl. 33, *citing LaCasse v. Babcock & Wilcox, Inc.*, 145 F.3d 1338, 1998 WL 340098 (9th Cir.1998)(Mont. Code Ann. 27–2–208(1)); *Larson v. Babcock & Wilcox*, 525 N.W.2d 589 (Minn.Ct.App. 1994)(Minn.Stat.Ann.541.051).

er, these cases are distinguishable. The *Larson* case involved application of the Minnesota construction statute, and specifically noted that the statute was amended in 1990 to create an exception for manufacturers and suppliers of equipment and machinery.[18] Because the exception was enacted after the claims had expired, and was not retroactive, the court held the claims were barred under the construction statute of repose.[19] In *LaCasse*, the Ninth Circuit, in an unpublished opinion, affirmed summary judgment in B & W's favor holding that the suit was barred by Montana's statute of repose for builders and architects.[20] The court held that the defendant did not fall into the materialman's exception from the statute of repose because "it expended substantial effort in constructing and installing the boiler."[21] However, because no facts are recited, the type of injury asserted, and the claims made in the case, are unknown. Given the brevity of the decision, it provides little support for the construction of the Indiana statute which B & W asserts in the motion for summary judgment before the court.

■ Summary judgment on the issue of whether the claim of SIGCO is barred by prescription is not appropriate at this time. Under the products liability statute, which the court holds is applicable here, Ind. Code 34–20–3–2(a), an action for property damage resulting from asbestos must be brought within two years of the date the injured person know that property damage has resulted from asbestos. Other than the date the boilers were installed, no dates have been provided which would support summary judgment. The court

cannot assume or speculate that SIGCO knew or should have known as of the date of installation that it was going to have property damages resulting from the asbestos in the five boilers. For that reason, summary judgment is denied on the issue of prescription, without prejudice.

### (C) Claim for reimbursement or contribution

B & W's second argument for summary judgment is that the SIGCO claim should be disallowed because it is an indirect contingent claim "for reimbursement or contribution of an entity that is liable with the debtor on . . . the claim of a creditor" under 11 USC § 502(e)(1)(B). The section provides, in pertinent part:

Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that–

. . . . .

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;

■ For a claim to be disallowed under § 502(e)(1)(B), the debtor must show: (1) the claim is for reimbursement or contribution; (2) the party asserting the claim is liable with the debtor on the claim of a creditor; and (3) the claim is contingent at the time of allowance or disallowance.[22]

■ Section 502(e)(1)(B) generally applies to a debt owed by the debtor to a

**18.** *Larson,* 525 N.W.2d at 591.

**19.** *Id.* at 591–92.

**20.** *LaCasse,* 145 F.3d at 1338.

**21.** *Id.*

**22.** *In re Eagle Picher Ind., Inc.,* 131 F.3d 1185, 1187 (6th Cir.1997); *In re Dant & Russell, Inc.,* 951 F.2d 246, 248 (9th Cir. 1991)(and cases cited therein).

creditor which has been guaranteed by a third party. Case law has also recognized that it also applies to disallow contingent reimbursement or contribution claims provided for by statute, such as the Comprehensive Environmental Response, Compensation and Liability Act.[23] It applies where both the debtor, as primary obligee, and a third party are liable to the government for environmental remediation damages, and the third party may seek reimbursement or contribution under the statute from the debtor while the government also files a claim.[24] Where third parties are not competing over the debtor's funds, § 502(e)(1)(B) is not implicated.[25]

The SIGCO claim is for damages for "the diminution of value or economic loss caused by asbestos" by the B & W boilers.[26] SIGCO further generally describes that its claim is for "diminution in value thereof or environmental damage or economic loss" caused by the boilers, or for "diminution in value of its real and/or personal property and/or cleanup costs in relation to asbestos containing products and/or services provided by Babcock." As discussed below, a claim for diminution in the value of property has been recognized as the type of claim subject to disallowance as a contingent claim.

B & W asserts that the case of *Eagle–Picher*[27] supports disallowance of SIGCO's contingent claim. In that case, Norpak filed a timely contingent claim for potential clean up costs on property purchased from the debtor. The debtor objected to the claim, arguing that it should be disallowed under § 502(b)(1)(E). No environmental claims were filed against the debtor prior to the claims bar date; however, the debtor entered into a settlement with the EPA permitting the agency to file claims in the future.[28] The court reasoned that the debtor was co-liable with Norpak on the potential EPA claim because the bar date is not an absolute bar to future claims, and Rule 9006(b)(1) would permit a late-filed claim by the EPA or state environmental agency if excusable neglect were shown, subjecting the debtor to double payment.[29] It also determined that Norpak's claim was one for "reimbursement and contribution" which is subject to disallowance. The court held that Norpak's claims for environmental clean up costs were claims that the debtor may be co-liable, stating that "[t]his is precisely the kind of contingent co-liability envisioned by § 502(e)(1)(B). If Norpak and Eagle–Picher are co-liable, then it is irrelevant that Norpak can also concoct an alternative theory on which to premise its claim against Eagle–Picher *such as diminution of value of the property due to Eagle–Picher's contamination of that property.*"[30] Instead, the Norpak claim was a "thinly disguised claim for reimbursement and contribution." In short, the potential responsibility of both debtor and a claimant for environmental cleanup costs, no matter the legal theory on which the liability was premised, was sufficient to hold

---

23. *In re Charter Co.,* 862 F.2d 1500 (11th Cir.1989).

24. *Colliers,* at pg. 502–63.

25. *Dant & Russell,* 951 F.2d at 248.

26. SIGCO Claim No. 228183.

27. 131 F.3d 1185 (6th Cir.1997).

28. *Id.* at 1187.

29. *Id.* at 1188. The case was remanded to the bankruptcy court to permit the court to examine whether a late fling by the EPA would be possible under the excusable neglect standard, taking into account the circumstances surrounding the consent agreement.

30. *Id.* at 1190 (emphasis added).

that the claim was one for reimbursement and contribution.[31]

While this court finds *Eagle–Picher* to be persuasive, no summary judgment evidence has been presented demonstrating co-liability of B & W and SIGCO for the alleged damages. The record is bereft of summary judgment evidence that would indicate, for instance, that a third party has requested clean up from SIGCO and filed, or may be able to file, a similar claim with B & W.

SIGCO asserts that, while its claim is contingent, it is a direct claim which may be estimated by the court. Estimation of contingent claims is permitted under section 502(c). SIGCO has not articulated the basis for its direct claim; however, a direct claim may be stated where a private party voluntarily incurs clean up costs for the amount actually incurred.[32] Because SIGCO has not requested estimation, and no evidence has been presented regarding its claim or estimated property damages, estimation is not appropriate at this time.

For the foregoing reasons, the court will deny the debtor's motion for summary judgment. An appropriate order will be entered.

---

**31.** *Id.* at 1190.

**32.** *Id.* at 248—250 (claim does not include costs which may be incurred in the future).