**ASBESTOS CORPORATION LIMITED, Appellant–Defendant,**

v.

**Frank AKAIWA, Executor of the Estate of Bill Z. Littlefield, Deceased, Appellee–Plaintiff.**

No. 49A02–0608–CV–676.

Court of Appeals of Indiana.

Aug. 31, 2007.

Jon L. Williams, Williams & Douglas, Indianapolis, IN, Attorney for Appellant.

1. We decide this case concurrent with *DAP, Inc. v. Akaiwa,* —— N.E.2d ——, No. 49A04–0608–CV–670 (Ind.App.2007); *TH Agric. & Nutrition, L.L.C. v. Akaiwa,* 872 N.E.2d 1104, No. 49A05–0608–CV–441 (Ind.App.2007); TH

Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, PA, Attorney for Appellee.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

Asbestos Corporation Limited ("ACL") brings this interlocutory appeal from the trial court's denial of its motions for summary judgment on the claims of Frank Akaiwa, Executor of the Estate of Bill Z. Littlefield.[1] We address a single dispositive issue on review, namely, whether Akaiwa presented sufficient evidence of exposure to ACL asbestos to survive summary judgment.

We reverse.

**FACTS AND PROCEDURAL HISTORY**

ACL is a miner of raw asbestos fibers and domiciled at Thetford Mines, Quebec. After mining the raw asbestos fibers, ACL sells the fibers to manufacturers of asbestos-containing products. ACL itself does not manufacture products containing asbestos.

Sometime between September of 1980 and August of 1982, Littlefield was exposed to raw asbestos fibers while working as an electrical contractor at Everett Electric. On July 17, 2004, Littlefield was diagnosed with mesothelioma as a result of his asbestos exposure. At no time prior to that diagnosis did Littlefield have "any reason to believe [he was] exposed to asbestos." Appellant's App. at 226.

*Agric. & Nutrition, L.L.C. v. Nevius,* No. 49A02–0608–CV–671, 872 N.E.2d 708 (Ind. App.2007); and *Sun Chem. v. Akaiwa,* No. 49A04–0608–CV–439, 872 N.E.2d 708 (Ind. App.2007).

Subsequent to the diagnosis, on January 7, 2005, Littlefield filed a complaint for damages naming numerous defendants, including ACL. During his ensuing deposition, Littlefield, through his attorney, listed a number of businesses that had manufactured asbestos-containing products used by Littlefield. In listing those business, Littlefield's attorney stated that Littlefield was "not going to identify anybody else's product." Appellant's App. at 225. Neither Littlefield nor his attorney identified ACL, but Littlefield did testify that he had worked with asbestos-containing products of General Electric ("GE") and ITE/BBC Brown Boveri ("ITE"), to which ACL, at various times, had sold raw asbestos fibers. In testifying to his interaction with GE products, Littlefield stated that he did not "recall seeing" any dust being given off by those products. *Id.* at 231–32. Likewise, Littlefield could not "remember any dust" in connection with his use or interaction with ITE products. *Id.* at 270.

Littlefield died on July 25, 2005, and Akaiwa was substituted as Littlefield's representative. In November of 2005, ACL filed two motions for summary judgment, arguing that it was entitled to relief under the statute of repose contained in Indiana Code Section 34–20–3–1 and that Akaiwa had failed to produce evidence of product identification and proximate causation. On June 23 and August 14, 2006, the trial court generally denied ACL's motions. The court certified its orders for interlocutory appeal, which we accepted.

## DISCUSSION AND DECISION

### Standard of Review

Our standard of review for summary judgment appeals is well established. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001). An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having its day in court. *Id.*

Summary judgment is appropriate only if the pleadings and evidence sanctioned by the trial court show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 909 (quoting Ind. Trial Rule 56(C)). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

The parties and amici dispute the application of *Jarboe v. Landmark Community Newspapers,* 644 N.E.2d 118 (Ind.1994), and the different summary judgment standards between Indiana and the federal courts. In *Jarboe,* our Supreme Court stated that it is the burden of the party moving for summary judgment to demonstrate "the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Id.* at 123. Amicus Defense Trial Counsel of Indiana ("DTCI"), joined by ACL, maintains that "panels of this Court have interpreted *Jarboe* to mean that defendants must prove a negative in order to satisfy their summary judgment burden. Such an interpretation works a substantial injustice." DTCI's Brief at 5–6 (citations omit-

ted). In response, amicus Indiana Trial Lawyers Association ("ITLA"), joined by Akaiwa, asserts that "[i]t is hard to understand how ... asbestos defendants can credibly argue here that the burdens placed upon them by *Jarboe* and the Trial Court are onerous, or even real." ITLA's Brief at 13. However, we need not address whether *Jarboe* requires defendants to "prove a negative," as DTCI argues. Rather, we hold that, even if *Jarboe* does require such a strict burden of movants for summary judgment, ACL has met its burden on the issue of Littlefield's exposure to its product and Akaiwa has not refuted ACL's designated evidence.

### Exposure

In response to ACL's motion for summary judgment, and on appeal, Akaiwa maintains that Littlefield was exposed to ACL asbestos through the products of GE and/or ITE. As such, to meet its burden under the strict interpretation of *Jarboe,* ACL was required to demonstrate that Littlefield was not exposed to ACL asbestos through either of those companies' products. We hold that ACL has met that burden.

In its motion for summary judgment on the issue of exposure, ACL designated to the trial court portions of Littlefield's deposition testimony. Specifically, with respect to GE's products, ACL directed the trial court to the following:

Q ... Have you ever broken any [of GE's plastic-like wall receptacles] in the [electrical] installation process?

A Yes.

Q Okay. How? How did that happen?

A Tightening down the screw too tight, causing it to crack. That's the most common way.

Q When that would happen, would you see any dust from this cracked plastic substance?

A I don't recall. Sometimes when they would crack, they would—things would go flying.

Q But the things that would go flying would be pieces of plastic that you could see[,] correct?

A Or pieces of—

Q Or a plastic-like substance?

A A substance, yes.

Q In the removal process, you've removed receptacles that were broken or cracked; correct?

A Yes.

Q Would that removal process give off dust?

A I'm not sure. I don't recall seeing it being visible.

Appellant's App. at 231–32. And regarding ITE's products, ACL directed the trial court to the following testimony:

Q When you were removing [ITE's circuit breakers], starting with the smaller breakers, any time you saw one that was broken and you were removing it, do you remember, was there any dust?

A I don't remember there being [any dust], but I know that they came apart in pieces.

Q Okay. When you were removing the larger breaker, the one instance that you remember that that was cracked, do you remember there being any dust specifically?

a I don't remember any dust. I can't remember that.

*Id.* at 270.

In other words, with respect to both the products of GE and of ITE, Littlefield testified that he did not recall either being exposed to or inhaling dust while working with, or otherwise being around, those products. And, again, GE and ITE are the only stipulated defendants to which Akaiwa alleges ACL sold raw asbestos.

Thus, ACL met its *Jarboe* burden of demonstrating that Littlefield was not exposed to ACL asbestos through either of those companies' products.

Once ACL made its prima facie case, the burden shifted to Akaiwa to present "sufficient evidence to establish a genuine issue of material fact as to exposure." *See Owens Corning,* 754 N.E.2d at 909; *Jarboe,* 644 N.E.2d at 123. That is, "a plaintiff must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product." *Parks v. A.P. Green Indus.,* 754 N.E.2d 1052, 1056 (Ind.Ct.App.2001) (quotation omitted), *abrogated on other grounds AlliedSignal, Inc. v. Ott,* 785 N.E.2d 1068, 1073 (Ind.2003). *See also Poirier v. A.P. Green Serv.,* Inc., 754 N.E.2d 1007, 1010 (Ind.Ct.App.2001), *abrogated on other grounds Ott,* 785 N.E.2d at 1073; *Black v. ACandS, Inc.,* 752 N.E.2d 148, 155 (Ind.Ct. App.2001), *abrogated on other grounds Ott,* 785 N.E.2d at 1073.[2]

Here, Akaiwa presented no evidence to establish a genuine issue of material fact as to whether he was exposed to or inhaled asbestos dust from ACL's products in his response to ACL's motion for summary judgment. Indeed, Akaiwa in no way addressed ACL's position on that point in his response to the trial court. On appeal, Akaiwa asserts that "breaking into pieces is, in fact, releasing dust from the product." Appellee's Brief at 10. In support, Akaiwa has submitted additional evidence not presented to the trial court, namely, the sworn medical opinions of Dr. James Girard and Dr. Arthur Frank. But our "[r]eview of a summary judgment motion is limited to those materials designated to the trial court." *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003) (citing T.R. 56(H)). Thus, we do not consider the additional evidence proffered by Akaiwa on appeal,[3] and we must conclude that Akaiwa has not produced sufficient evidence to support an inference that he inhaled asbestos dust from an ACL product.

Reversed.

RILEY, J., and BARNES, J., concur.

---

**2.** In a separate case, the deciding panel in *Poirier* and *Black* made the additional statement that "[t]his inference can be made only if it is shown the product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a *significant amount* of asbestos dust and that the plaintiff might have inhaled the dust." *Fulk v. Allied Signal, Inc.,* 755 N.E.2d 1198, 1203 (Ind.Ct. App.2001) (emphasis added; citation omitted), *abrogated on other grounds Ott,* 785 N.E.2d at 1073. While that standard is argu- ably contrary to the standards announced in *Parks, Poirier,* and *Black,* and to the method used by our Supreme Court in *Owens Corning,* we need not address that possibility as even under the more lenient standard Akaiwa has not met his *Jarboe* burden.

**3.** Even if we were to consider those designated records, it is not clear how they would support the proposition that dust necessarily results from a product's breaking into pieces.