**DAP, INC., Appellant–Defendant,**

v.

**Frank AKAIWA, Executor of the Estate of Bill Z. Littlefield, Deceased, Appellee–Plaintiff.**

No. 49A02–0608–CV–670.

Court of Appeals of Indiana.

Aug. 31, 2007.

---

Sonia C. Das, Susan E. Mehringer, Daun A. Weliever, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

DAP, Inc. ("DAP") brings this interlocutory appeal from the trial court's denial of

its motion for summary judgment on the claims of Frank Akaiwa, Executor of the Estate of Bill Z. Littlefield.[1] We address a single dispositive issue on review, namely, whether the trial court properly determined that the ten-year statute of repose contained in Indiana Code Section 34–20–3–1 does not apply to Akaiwa's cause of action.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Between 1960 and 1977, DAP manufactured an asphalt sealant, known as "Black–Tite Roof Sealant," and an elastic glazing compound, known as "33 Glazing." Appellant's App. at 275. Through 1977, both of those products contained asbestos fibers. However, DAP did not mine or sell raw asbestos.

Sometime between 1980 and 1982, Littlefield used a "black textured sealant" and a silicone sealant made by DAP while working for Everett Electric in Fairmount. Id. at 166, 169. However, those sealants did not create any dust to which Littlefield could have been exposed. Nonetheless, at some point in or about that time frame, Littlefield was exposed to asbestos.

Littlefield first developed symptoms consistent with asbestos exposure in June of 2004, which he believed to be bronchitis at that time. However, on July 17, Littlefield was diagnosed with mesothelioma as a result of his asbestos exposure. Subsequently, on January 10, 2005, Littlefield filed a complaint for damages naming numerous defendants, including DAP.

Littlefield died on July 25, 2005, and Akaiwa was substituted as Littlefield's representative. Following discovery, DAP moved for summary judgment. The trial court generally denied DAP's motions and certified its order for interlocutory appeal, which we accepted.

## DISCUSSION AND DECISION

 We initially note that Akaiwa did not timely file an appellee's brief. Accordingly, we do not undertake the burden of developing arguments for the appellee, as that duty remains with him. *Railing v. Hawkins*, 746 N.E.2d 980, 982 (Ind.Ct. App.2001). Normally when the appellee does not file a brief, we apply a less stringent standard of review and may reverse the trial court when the appellant establishes prima facie error. *Id.* "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App.1985)).

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind. 2005). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* However, questions of law are reviewed *de novo*. *See Tippecanoe Coun-*

---

1. We decide this case concurrent with *Asbestos Corp., Ltd. v. Akaiwa*, 872 N.E.2d 1095, No. 49A02–0608–CV–676; *TH Agric. & Nutrition, L.L.C. v. Akaiwa*, 872 N.E.2d 1104, No. 49A05–0608–CV–441; *TH Agric. & Nutrition, L.L.C. v. Nevius*, No. 49A02–0608–CV–671; and *Sun Chem. v. Akaiwa*, No. 49A04–0608–CV–439, 872 N.E.2d 708.

ty v. Ind. Mfrs. Ass'n, 784 N.E.2d 463, 465 (Ind.2003).

█ Indiana Code Chapter 34–20–3 provides the statutes of limitations and repose in product liability actions and specifically addresses asbestos-related actions. In particular, Indiana Code Section 34–20–3–1 ("Section 1") states, in relevant part:

(b) Except as provided in section 2 of this chapter, a product liability action must be commenced:

(1) within two (2) years after the cause of action accrues; or

(2) within ten (10) years after the delivery of the product to the initial user or consumer.

And Indiana Code Section 34–20–3–2 ("Section 2") provides:

(a) *A product liability action that is based on:*

(1) property damage resulting from asbestos; or

(2) *personal injury, disability, disease, or death resulting from exposure to asbestos;*

*must be commenced within two (2) years after the cause of action accrues.* The subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action.

(b) A product liability action for personal injury, disability, disease, or death resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury.

(c) A product liability action for property damage accrues on the date when the injured person knows that the property damage has resulted from asbestos.

(d) *This section applies only to product liability actions against:*

(1) *persons who mined and sold commercial asbestos;* and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

(e) For the purposes of IC 1–1–1–8, if any part of this section is held invalid, the entire section is void.

(f) Except for the cause of action expressly recognized in this section, this section does not otherwise modify the limitation of action or repose period contained in section 1 of this chapter.

As our Supreme Court has held: "the language used by the Legislature represents its conscious intent to subject to Section 2 only those persons who produce raw asbestos—'persons who mine[ ] and s[ell] commercial asbestos'—and leave those who sell asbestos-containing products within the ambit of Section 1." *Allied-Signal, Inc. v. Ott,* 785 N.E.2d 1068, 1073 (Ind.2003) (alterations in original). Our Supreme Court's express holding in *Ott* forecloses the application of Section 2 to non-miner defendants. *See id.* Here, it is undisputed that DAP is a non-miner defendant. Thus, Akaiwa's action is barred by Section 1's ten-year statute of repose because he did not commence his action until more than twenty years after Littlefield's last possible exposure to asbestos.

Notably, in *Ott* our Supreme Court also held that application of Section 1 "might be unconstitutional as applied to the plaintiff if a reasonably experienced physician could have diagnosed [the plaintiff] with an asbestos-related illness or disease within the ten-year statute of repose, yet [the plaintiff] had no reason to know of the diagnosable condition until the ten-year period had expired." *Ott,* 785 N.E.2d at 1075. In his Memorandum in Opposition

to DAP's Renewed Motion for Summary Judgment,[2] Akaiwa argued that application of Section 1 to Littlefield would be unconstitutional because "[a] reasonable physician *could* have diagnosed" Littlefield within ten years after his exposure, even if doing so would have involved a medically unethical procedure. Appellant's App. at 279–80 (emphasis added). Akaiwa conceded that Littlefield "had no reason to seek medical diagnosis and treatment, including diagnostic biopsy, or to know he had been injured by asbestos, until he developed signs and symptoms." *Id.*

In *Jurich v. John Crane, Inc.*, 824 N.E.2d 777, 780–83 (Ind.Ct.App.2005), *trans. denied,* we expressly rejected the arguments Akaiwa made to the trial court on the issue of whether Section 1 is unconstitutional as applied. Specifically, we stated:

> We must carefully consider the language specifically chosen or highlighted by our supreme court, including "asbestos-related *illness or disease,*" or "manifested" disease as contrasted with "subclinical" or "asymptomatic" conditions caused by asbestos. *Ott,* 785 N.E.2d at 1075 (emphasis added). In so doing, we conclude that *Ott's* requirement of a "manifested" "asbestos-related illness or disease" that could have been diagnosed by a "reasonably experienced physician" refers to a disease that is a clinically-recognized symptomatic condition, or one that could have been detected by a competent physician conducting a routine examination of the patient. This would exclude asymptomatic conditions that merely represent the early stages of a potential disease or conditions that could only be detected by a physician utilizing extreme

and medically unsound or unethical measures.

*Id.* at 783. Again, it is undisputed that Littlefield did not develop signs or symptoms until June of 2004, about twenty-two years after his last possible exposure to asbestos. Hence, Akaiwa's argument to the trial court that Section 1 is unconstitutional as applied must fail.

■ Finally, although Akaiwa did not file an Appellee's Brief, amici Indiana Trial Lawyers Association ("ITLA") and Defense Trial Counsel of Indiana ("DTCI") dispute whether our Supreme Court's analysis of Section 1 and Section 2 violates Article I, Section 23 of the Indiana Constitution. Article I, Section 23 of the Indiana Constitution provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." ITLA contends that the "*Ott* interpretation of Section 2 is unconstitutional" because it treats similarly situated plaintiffs and defendants differently. ITLA's Brief at 6, 8. On the other hand, DTCI argues that Section 2 does not violate Indiana's Constitution.

ITLA's arguments are unavailing. In *Ott,* our Supreme Court considered the constitutionality of its interpretation as applied to differently treated plaintiffs, stating:

> [W]e find it unnecessary to determine whether the distinction is constitutionally permissible because the classification resulting from the distinction of which the plaintiffs complain ... works in favor of asbestos plaintiffs. Asbestos plaintiffs are subject to the same statute

---

**2.** Because DAP established that Akaiwa filed his lawsuit more than ten years after the last delivery of any of their products to Littlefield, the burden was on Akaiwa "to demonstrate a material issue of fact that would avoid appli-

cation of the statute of repose affirmative defense." *See Jurich v. John Crane, Inc.,* 824 N.E.2d 777, 780 (Ind.Ct.App.2005), *trans. denied.*

of repose as other products liability claims with respect to all defendants other than persons who mine and sell commercial asbestos and certain bankruptcy funds. With respect to the latter two classes of defendants, asbestos plaintiffs are not subject to a statute of repose at all. To the extent there is any art. I, § 23 defect, asbestos plaintiffs do not suffer any cognizable harm.

*Ott*, 785 N.E.2d at 1077 (footnote and citation omitted). Our Supreme Court then reserved the question of "Section 2's constitutionality as applied to miners," as the asbestos-defendant then before the court was found to not be a miner. *Id.* at 1077 n. 11.

 Again, *Ott* controls the issue presented. Insofar as ITLA argues that we overturn our Supreme Court's precedent regarding the application of Section 2 to asbestos-plaintiffs, "we are bound by our supreme court's precedent." *See State v. Jackson*, 857 N.E.2d 378, 381 (Ind.Ct.App. 2006). *See also Horn v. Hendrickson*, 824 N.E.2d 690, 695 (Ind.Ct.App.2005) ("the Court of Appeals is well aware of the controlling precedents of our supreme court and has no desire to proceed in conflict with them. We are an intermediate appellate court."). To the extent that ITLA maintains that we should reach the issue of Section 2's constitutionality as applied to miners, we decline to address that argument since, again, DAP is not a miner. *See Ott*, 785 N.E.2d at 1077 n. 11. Like-

wise, we need not address DTCI's arguments given the facts and posture of this case.[3]

The parties and amici also dispute the trial court's application of *Jarboe v. Landmark Community Newspapers*, 644 N.E.2d 118 (Ind.1994), and the different summary judgment standards between Indiana and the federal courts. First, DTCI maintains that "panels of this Court have interpreted *Jarboe* to mean that defendants must prove a negative in order to satisfy their summary judgment burden. Such an interpretation works a substantial injustice." DTCI's Brief at 5–6 (citations omitted). In response, ITLA asserts that "[i]t is hard to understand how ... asbestos defendants can credibly argue here that the burdens placed upon them by *Jarboe* and the Trial Court are onerous, or even real." ITLA's Brief at 13. However, we need not address the contentions of the parties and amici concerning the operation and effect of *Jarboe* because DAP is protected by Section 1's statute of repose.

In sum, we reverse the trial court's denial of DAP's motion for summary judgment. Because DAP is not a miner, Section 2 cannot apply to DAP, and Akaiwa's cause of action is barred by Section 1's ten-year statute of repose. Further, ITLA's contention that the "*Ott* interpretation of Section 2 is unconstitutional," ITLA's Brief at 6, 8, is beyond the scope of our review. Akaiwa lacks a cognizable harm from which to challenge any constitutional de-

---

3. In any event, even if we were to find Section 2 applicable and unconstitutional, DAP would be protected by Section 1's statute of repose. Indiana Code Section 34–20–3–2(e) states that "if any part of [Section 2] is held invalid, the entire section is void." But Indiana Code Section 34–20–1–3 states: "If a provision of this article or its application to a person or circumstance is held invalid, the

invalidity does not affect other provisions or applications, and to this end the provisions of this article are severable." Thus, if Section 2 were unconstitutional, it would be severed from Indiana Code Article 34–20, and Section 1 would remain intact as the only source of the statutes of limitations and repose applicable to Akaiwa's cause of action.

fect, and DAP, as a non-miner, lacks standing to challenge Section 2.

Reversed.

RILEY, J., and BARNES, J., concur.