**TH AGRICULTURE AND NU-TRITION, LLC, Appel-lant–Defendant,**

v.

**Frank AKAIWA, Executor of the Es-tate of Bill Z. Littlefield, De-ceased, Appellee–Plaintiff.**

No. 49A05–0608–CV–441.

Court of Appeals of Indiana.

Aug. 31, 2007.

Cynthia M. Locke, William N. Ivers, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellant.

Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, PA, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

TH Agriculture and Nutrition, L.L.C. ("THAN") brings this interlocutory appeal

from the trial court's denial of its motion for summary judgment on the claims of Frank Akaiwa, Executor of the Estate of Bill Z. Littlefield.[1] We address a single dispositive issue on review, namely, whether the trial court properly determined that the ten-year statute of repose contained in Indiana Code Section 34–20–3–1 does not apply to Akaiwa's cause of action.

We reverse.

## FACTS AND PROCEDURAL HISTORY

THAN was formed in 1998 and is the successor by merger to TH Agriculture and Nutrition, Inc., formerly known as Thompson–Hayward Chemical Company ("THCC"). THCC did not mine asbestos. THCC did not manufacture asbestos-containing products. However, on behalf of Carey–Canadian Mines, Ltd. ("Carey"), THCC did distribute to portions of the United States various grades of chrysotile asbestos fibers. Those distributions all occurred between April 1, 1960, and June 1, 1980. Additionally, between April of 1963 and May of 1967, THCC maintained a distribution facility in Indianapolis. Carey is currently in bankruptcy.

Sometime between June 1, 1976, and August 1, 1982,[2] Littlefield was exposed to raw asbestos fibers while working in Indiana. On July 17, 2004, Littlefield was diagnosed with mesothelioma as a result of his asbestos exposure. At no time prior to that diagnosis did Littlefield have "any reason to believe [he was] exposed to asbestos." Appellant's App. at 202.

Subsequently, on January 10, 2005, Littlefield filed a complaint for damages naming numerous defendants, including THAN. During his ensuing deposition, Littlefield stated during cross-examination:

Q. Let me just ask you, you've also listed on your Verified Disclosure Statement a Defendant called [THAN]. . . .

A. Okay.

Q. Do you have any information that you were exposed to asbestos fibers provided by [THAN]?

A. I'm trying to recollect what their products are.

Q. Well, your Verified Disclosure just says "asbestos fiber." Are you familiar, at all, with the name "[THAN]"?

A. I've heard it before. I'm drawing a blank right now.

Q. Are you familiar with the name TH Agriculture and Nutrition?

A. Again, I'm drawing a blank right now.

Q. So you don't have any independent knowledge, personal knowledge, of any occasion when you've encountered a product supplied or provided or distributed by a company called [THAN]?

A. My problem right now is I'm having a disconnect between my products and my companies.

Q. So your answer to my question is, no, you don't have any recollection?

A. Yeah, I just have a disconnect right now.

*Id.* at 289.

On May 26, 2005, Littlefield filed his First Amended Verified Initial Disclosure Statement ("VIDS"), in which he stated that THAN "and its predecessors in inter-

---

1. We decide this case concurrent with *Asbestos Corp., Ltd. v. Akaiwa*, 872 N.E.2d 1095, 2007 WL 2458777, No. 49A02–0608–CV–676; *DAP, Inc. v. Akaiwa*, 872 N.E.2d 1098, 2007 WL 2459113, No. 49A02–0608–CV–670; *TH Agric. & Nutrition, L.L.C. v. Nevius*, No. 49A02–0608–CV–671, 2007 WL 2459168; and *Sun Chem. v. Akaiwa*, No. 49A04–0608–CV–439, 2007 WL 2459186.

2. THAN does not dispute Akaiwa's alleged time frame.

est were distributors of raw fiber mined by other entities...." *Id.* at 304. On June 7, Littlefield filed his Fourth Amended VIDS, stating that THAN "supplied mined asbestos used by the product defendants in their products. [THAN is] thus [a] mining compan[y]." *Id.* at 323.

Littlefield died on July 25, 2005, and Akaiwa was substituted as Littlefield's representative. On December 21, Akaiwa filed an amended complaint, alleging that THAN, among others, sold asbestos fiber to one or more of the product defendants, who then incorporated that fiber into their products and thereby exposed Littlefield to the asbestos. On May 2, 2006, THAN filed a Motion for Summary Judgment on the amended complaint. On June 23, the trial court generally denied THAN's motion. The court certified its order for interlocutory appeal, which we accepted.

## DISCUSSION AND DECISION

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind. 2005). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* All evidence must be con-

strued in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* However, questions of law are reviewed *de novo. See Tippecanoe County v. Ind. Mfrs. Ass'n,* 784 N.E.2d 463, 465 (Ind.2003).

Akaiwa maintains that THAN "is a miner [of asbestos] because it stands[,] as the principal distributor of [Carey,] in Carey's shoes since Carey is bankrupt." Appellee's Brief at 4. In support, Akaiwa cites Indiana Code Section 34–20–2–4,[3] which states:

> If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, *for the purposes of this chapter,* the manufacturer of the product.

Ind.Code § 34–20–2–4 (West 2004) (emphasis added). Thus, Akaiwa argues that, since Carey is not subject to Indiana's jurisdiction due to its bankruptcy and THAN was Carey's principal distributor in Indiana, THAN should be held to Carey's liability.

But Akaiwa ignores Indiana Code Chapter 34–20–3,[4] which provides the statutes of limitations and repose in product liability actions and specifically addresses asbestos-related actions. Specifically, Indiana Code Section 34–20–3–1 ("Section 1") states, in relevant part:

---

3. Akaiwa's citation to this section of the Indiana Code appears on page five of his brief. However, on page six he references "the public purpose of 34–20–3–4." As the Indiana Code does not contain a section 34–20–3–4, we assume that that reference was to section 34–20–2–4.

4. We also note that Akaiwa's table of authorities lists Indiana Code Sections 34–20–3–1

and 34–20–3–2 as being referenced "passim" in his brief. Appellee's Brief at iii. However, Akaiwa's only reference in his entire brief to either of those statutes occurs at the beginning of his argument when he frames the issue by quoting part of section 34–20–3–2(d)(1). Nowhere in his brief does Akaiwa provide substantive analysis or application of those statutes.

(b) Except as provided in section 2 of this chapter, a product liability action must be commenced:

(1) within two (2) years after the cause of action accrues; or

(2) within ten (10) years after the delivery of the product to the initial user or consumer.

And Indiana Code Section 34–20–3–2 ("Section 2") provides:

(a) *A product liability action that is based on:*

(1) property damage resulting from asbestos; or

(2) *personal injury, disability, disease, or death resulting from exposure to asbestos;*

*must be commenced within two (2) years after the cause of action accrues.* The subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action.

(b) A product liability action for personal injury, disability, disease, or death resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury.

(c) A product liability action for property damage accrues on the date when the injured person knows that the property damage has resulted from asbestos.

(d) *This section applies only to product liability actions against:*

(1) persons who mined and sold commercial asbestos; and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

(e) For the purposes of IC 1–1–1–8, if any part of this section is held invalid, the entire section is void.

(f) Except for the cause of action expressly recognized in this section, this section does not otherwise modify the limitation of action or repose period contained in section 1 of this chapter.

As our Supreme Court has held: "the language used by the Legislature represents its conscious intent to subject to Section 2 only those persons who produce raw asbestos—'persons who mine[ ] and s[ell] commercial asbestos'—and leave those who sell asbestos-containing products within the ambit of Section 1." *Allied-Signal, Inc. v. Ott,* 785 N.E.2d 1068, 1073 (Ind.2003) (alterations in original). Thus, if THAN both mined and sold commercial asbestos, Akaiwa could maintain his cause of action against THAN since that action was commenced within two years of the development of Littlefield's asbestos-related disease and death. But if THAN is not a miner, Section 2 does not apply to Akaiwa's action. In such circumstances, Section 1 would apply, and Akaiwa's action would be barred by the ten-year statute of repose [5] since the action did not commence

---

**5.** Notably, in *Ott* our Supreme Court also held that application of Section 1 "might be unconstitutional as applied to the plaintiff if a reasonably experienced physician could have diagnosed [the plaintiff] with an asbestos-related illness or disease within the ten-year statute of repose, yet [the plaintiff] had no reason to know of the diagnosable condition until the ten-year period had expired." *Ott,* 785 N.E.2d at 1075. However, Akaiwa did

not advance that argument either to the trial court or on appeal. As such, that argument is waived. *See Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003) (citing T.R. 56(H)); *Anderson v. Four Seasons Equestrian Ctr., Inc.,* 852 N.E.2d 576, 581 n. 7 (Ind.Ct.App. 2006), *trans. denied.* In any event, Littlefield testified that he had no "reason to believe [he was] exposed to asbestos" at any time prior to

until more than twenty years after Littlefield's last possible exposure to asbestos. Our Supreme Court's express holding in *Ott* forecloses the application of Section 2 to non-miner defendants. *See id.*

Here, it is undisputed that THAN did not mine asbestos. Indeed, Akaiwa's argument on appeal acknowledges that THAN is no more than a distributor of asbestos, but he then argues that Indiana Code Section 34–20–2–4 requires treating THAN as if it were also a miner.[6] But we expressly rejected that argument in *Briggs v. Griffin Wheel Corp.,* 851 N.E.2d 1261, 1263–64 (Ind.Ct.App.2006), which Akaiwa makes no attempt to distinguish. Among other things, we noted in *Briggs* that Section 34–20–2–4 explicitly applies only to Indiana Code Chapter 34–20–2, whereas the statute of repose of Section 1 and the *miner exception of Section 2 are contained in Chapter 34–20–3.* *See* I.C. § 34–20–2–4; *Briggs,* 851 N.E.2d at 1263–64. And, in any event, to accept Akaiwa's argument would require this Court to disregard our Supreme Court's clear holding in *Ott,* which read Section 2 to apply only to actual miners of asbestos. *See Ott,* 785 N.E.2d at 1073; *Briggs,* 851 N.E.2d at 1263–64.

■ Finally, amici Indiana Trial Lawyers Association ("ITLA") and Defense Trial Counsel of Indiana ("DTCI") dispute whether our Supreme Court's analysis of Section 1 and Section 2 violates Article I, Section 23 of the Indiana Constitution. Article I, Section 23 of the Indiana Constitution provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." ITLA contends that the "*Ott* interpretation of Section 2 is unconstitutional" because it treats similarly situated plaintiffs and defendants differently. ITLA's Brief at 6, 8. On the other hand, DTCI argues that Section 2 does not violate Indiana's Constitution.

ITLA's arguments are unavailing. In *Ott,* our Supreme Court considered the constitutionality of its interpretation as applied to differently treated plaintiffs, stating:

> [W]e find it unnecessary to determine whether the distinction is constitutionally permissible because the classification resulting from the distinction of which the plaintiffs complain ... works in favor of asbestos plaintiffs. Asbestos plaintiffs are subject to the same statute of repose as other products liability claims with respect to all defendants other than persons who mine and sell commercial asbestos and certain bankruptcy funds. With respect to the latter two classes of defendants, asbestos plaintiffs are not subject to a statute of repose at all. To the extent there is any art. I, § 23 defect, asbestos plaintiffs do not suffer any cognizable harm.

*Ott,* 785 N.E.2d at 1077 (footnote and citation omitted). Our Supreme Court then reserved the question of "Section 2's constitutionality as applied to miners," as the asbestos-defendant then before the court

his diagnosis in 2004. Appellant's App. at 202.

**6.** Specifically, Akaiwa argues that we should treat miners, distributors, and manufacturers of asbestos equally in applying Section 2. In support, Akaiwa baldly states that THAN "eve[n] conceded [to the trial court] ... that a miner is the manufacturer of the raw asbestos." Appellee's Brief at 6. But that statement is not supported by the record. Rather, THAN stated to the trial court that Akaiwa "alleges [that] THAN 'is to be considered the principal distributor of Carey and ... is to be treated as a mining company.'" Appellant's App. at 453. Thus, THAN merely summarized Akaiwa's arguments to the trial court; THAN did not concede that it was a miner.

was found to not be a miner. *Id.* at 1077 n. 11.

Again, *Ott* controls the issue presented. Insofar as ITLA argues that we overturn our Supreme Court's precedent regarding the application of Section 2 to asbestos-plaintiffs, "we are bound by our supreme court's precedent." *See State v. Jackson,* 857 N.E.2d 378, 381 (Ind.Ct.App.2006). *See also Horn v. Hendrickson,* 824 N.E.2d 690, 695 (Ind.Ct.App.2005) ("the Court of Appeals is well aware of the controlling precedents of our supreme court and has no desire to proceed in conflict with them. We are an intermediate appellate court."). To the extent that ITLA maintains that we should reach the issue of Section 2's constitutionality as applied to miners, we decline to address that argument since, again, THAN is not a miner. *See Ott,* 785 N.E.2d at 1077 n. 11. Likewise, we need not address DTCI's arguments given the facts and posture of this case.[7]

The parties and amici also dispute the trial court's application of *Jarboe v. Landmark Community Newspapers,* 644 N.E.2d 118 (Ind.1994), and the different summary judgment standards between Indiana and the federal courts. First, DTCI maintains that "panels of this Court have interpreted *Jarboe* to mean that defendants must prove a negative in order to satisfy their summary judgment burden. Such an interpretation works a substantial injustice." DTCI's Brief at 5–6 (citations omitted). In response, ITLA asserts that "[i]t is hard to understand how ... asbestos defendants can credibly argue here that the burdens placed upon them by

*Jarboe* and the Trial Court are onerous, or even real." ITLA's Brief at 13. However, we need not address the contentions of the parties and amici concerning the operation and effect of *Jarboe* because THAN is protected by Section 1's statute of repose.

In sum, we reverse the trial court's denial of THAN's motion for summary judgment. Because THAN is not a miner, Section 2 cannot apply to THAN, and Akaiwa's cause of action is barred by Section 1's ten-year statute of repose. Further, ITLA's contention that the "*Ott* interpretation of Section 2 is unconstitutional," ITLA's Brief at 6, 8, is beyond the scope of our review. Akaiwa lacks a cognizable harm from which to challenge any constitutional defect, and THAN, as a non-miner, lacks standing to challenge Section 2.

Reversed.

RILEY, J., and BARNES, J., concur.

---

7. In any event, even if we were to find Section 2 applicable but unconstitutional, THAN would be protected by Section 1's statute of repose. Indiana Code Section 34–20–3–2(e) states that "if any part of [Section 2] is held invalid, the entire section is void." But Indiana Code Section 34–20–1–3 states: "If a provision of this article or its application to a person or circumstance is held invalid, the invalidity does not affect other provisions or applications, and to this end the provisions of this article are severable." Thus, if Section 2 were unconstitutional, it would be severed from Indiana Code Article 34–20, and Section 1 would remain intact as the only source of the statutes of limitations and repose applicable to Akaiwa's cause of action.