PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1988
_____

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION
(NO. VI)

Steven Frankenberger, Special Administrator
for the Estate of Howard L. Frankenberger*,

Appellant

*(Amended pursuant to the Clerk's order
entered March 21, 2016)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 2-09-cv-61717
D.C. Civil Action No. 2-01-md-00875
District Judge: Honorable Eduardo C. Robreno
_____

Argued: January 14, 2016

Before:  MCKEE, Chief Judge, AMBRO, and SCIRICA,
Circuit Judges

(Filed: September 13, 2016)

Robert G. McCoy, Esq. [ARGUED]
Cascino Vaughn Law Offices
220 South Ashland Avenue
Chicago, IL  60607

    *Counsel for Appellant*

Christopher G. Conley, Esq. [ARGUED]
Evert Weathersby & Houff
200 Cleveland Road
Suite 6
Bogart, GA  30622

    *Counsel for Appellee*

_____

## OPINION OF THE COURT
_____

**SCIRICA**, <u>Circuit Judge</u>

Steven Frankenberger, on behalf of the estate of Howard Frankenberger, appeals an order of the District Court dismissing his civil suit against CBS Corporation.  He asserts state law causes of action arising from Howard Frankenberger's exposure to asbestos during his forty-five years working as a pipefitter at various facilities in Illinois and Indiana, which he alleges was caused by asbestos-containing turbines and switchgears at those facilities.

Following discovery, CBS Corporation moved for summary judgment, and the District Court granted the motion. While we agree with the District Court that Frankenberger's turbine-related claim fails to demonstrate CBS Corporation was a cause of his asbestos exposure, we disagree with its conclusion that the switchgear-related claim is similarly deficient. Accordingly, we will affirm in part and reverse in part the District Court's order, and remand for further proceedings consistent with this opinion.

## I.

From approximately 1953 until 1999, Frankenberger worked as a pipefitter at various facilities in Illinois and Indiana. Three of those facilities are relevant to this appeal: State Line Generating Station in Hammond, IN ("State Line"); Will County Generating Station in Romeoville, IL ("Romeoville"); and Acme Steel in Riverdale, IL ("Acme"). Towards the end of his career in January 1996, Frankenberger was diagnosed with a lung condition consistent with asbestos-related pleural disease. He was later diagnosed with lung cancer in 2004, and passed away from the disease in 2005. A medical expert determined Frankenberger's lung cancer was caused, at least in part, by his exposure to asbestos.

Frankenberger alleges his asbestos exposure occurred as a result of his work in the State Line, Romeoville, and Acme facilities. Specifically, he alleges two asbestos-containing pieces of equipment at these facilities resulted in his exposure: turbines and switchgears. Both pieces of equipment were manufactured and maintained by Westinghouse Electric Corporation, a predecessor to CBS Corporation.

3

Westinghouse turbines are large pieces of equipment that contain many parts. The part at issue in this case is the thermal insulation inside the turbines. When first delivered to the facilities, Westinghouse turbines contained their original thermal insulation, which was, like the rest of the turbine, manufactured by Westinghouse. Until 1973, this original thermal insulation may have contained asbestos. After 1973, however, Westinghouse required asbestos-free insulation.

While the insulation was normally housed within the turbine, it was removed whenever the turbines underwent maintenance or repair. Following the maintenance, the original thermal insulation was sometimes placed back into the turbine, but other times was replaced with new thermal insulation, which may or may not have been manufactured by Westinghouse. While an expert testified on behalf of Frankenberger that the original thermal insulation in turbines was saved whenever possible, there is no evidence in the record regarding how frequently the insulation in Westinghouse turbines required replacing. Nor is there evidence regarding the specific turbines in the facilities where Frankenberger worked: it is unknown how long the original insulation remained in the turbines at those facilities, and if it was replaced, it is unknown whether the replacement insulation was manufactured by Westinghouse or another company.

A coworker of Frankenberger's, Ernest Sperber, testified in a deposition that he worked with Frankenberger for a total of two to three years during the 1960s, 1970s, and 1980s. Sperber testified Westinghouse turbines were present at the State Line, Romeoville, and Acme facilities. He further testified that on two or three occasions while he was working

4

with Frankenberger, the turbines underwent maintenance supervised by Westinghouse employees, during which the insulation inside the turbines was removed. According to Sperber, the removal of the insulation created dust which he and Frankenberger breathed in. While neither Sperber nor Frankenberger worked directly with the turbines, Frankenberger claims by breathing in dust created by the turbine maintenance, he was exposed to asbestos.

In addition to the turbines, Frankenberger alleges Westinghouse switchgears caused him to be exposed to asbestos. The Westinghouse switchgears present in the facilities where Frankenberger worked were similar to household circuit breakers. They were made up of many component parts, some of which contained asbestos. Specifically, an asbestos rope was used in the switchgears until 1977, and an asbestos cement board was used until at least 1985, and possibly longer. These parts made up a very small portion—approximately one percent—of the overall weight of the equipment. While not every Westinghouse switchgear incorporated these asbestos-containing components, the higher voltage versions of switchgears did until 1977. Such higher voltage versions were likely present at industrial facilities like the ones in which Frankenberger worked.

The asbestos-containing parts in the switchgears, much like the insulation in the turbines, were typically enclosed. But when electricians performed maintenance on the switchgears, they used compressed air to remove dust from inside them, spraying it into the air. Sam Wineman, an engineering expert, testified on behalf of Frankenberger that when dust was blown out from a switchgear with asbestos-

5

containing parts, it was likely to contain asbestos. Wineman's expert report concluded that "[i]t is most likely that the dust which had accumulated inside the switchgear boxes or on the gear before inspection and cleaning of the switchgear contained asbestos from deteriorated components." But it is also possible for non-asbestos containing dust to accumulate inside the switchgear. A cleaning manual for the switchgear suggests it should be regularly cleaned due, in part, to "dust deposited from the air which can readily be blown out of the chute with a dry compressed air stream."

Sperber testified he recalled electricians using compressed air to blow dust from inside the switchgears, which he and Frankenberger breathed in. Although Sperber conceded he did not work directly with the switchgears, he testified he and Frankenberger worked in the vicinity of the switchgears. Frankenberger alleges by breathing in the dust that resulted from the maintenance on Westinghouse switchgears, he was exposed to asbestos.

## II.

Frankenberger filed his lawsuit in the Northern District of Indiana, and it was transferred in January 2009 to the Eastern District of Pennsylvania as part of a multidistrict litigation (MDL-875). Following the transfer, the parties conducted discovery, and on August 18, 2014, CBS Corporation filed a motion for summary judgment. The District Court granted the motion on February 11, 2015.

The District Court held that Frankenberger did not present sufficient evidence of causation to survive summary

6

judgment. With respect to the turbines, the Court found evidence the turbine and original insulation at the facilities where Frankenberger worked were supplied by Westinghouse and contained asbestos. However, the Court found "no evidence that the insulation to which [Frankenberger] was exposed was this original insulation – or that it was replacement insulation that contained asbestos."

With respect to the switchgears, the Court found evidence Frankenberger was exposed to dust from asbestos-containing Westinghouse switchgears. However, the Court found "no evidence that the dust was from the switchgear itself (for example, because the switchgear was deteriorating) as opposed to being external dust on the switchgear (i.e., not asbestos-containing dust)." As a result, the Court granted summary judgment to CBS Corporation and dismissed Frankenberger's claims. This appeal followed.

## III.

The District Court had jurisdiction under the multidistrict litigation statute, 28 U.S.C. § 1407, which authorizes the transfer of cases that present common issues of fact to a single district court. Jurisdiction was originally based on diversity of citizenship under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary. *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014). A moving party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a

7

material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While all reasonable inferences must be drawn in favor of the nonmoving party, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quotation marks omitted).

## IV.

### A.

At the outset, we will address the two distinct statute of repose defenses raised by CBS Corporation in its briefing. The first was that Indiana's product-liability repose statute, Ind. Code § 34-20-3-1, barred Frankenberger's claims in their entirety. But after this case was argued, the Indiana Supreme Court determined the statute was unconstitutional as applied to asbestos claims such as Frankenberger's. *Myers v. Crouse-Hinds Div. of Cooper Indus.*, 53 N.E.3d 1160, 1167 (Ind. 2016). As CBS Corporation acknowledged in a subsequent letter to the Court, the statute "no longer extends to asbestos claims." Accordingly, Indiana's product liability repose statute does not bar Frankenberger's claims.

CBS Corporation's second statute of repose defense is that Indiana's construction repose statute bars Frankenberger's turbine-related claims. The construction repose statute bars tort claims arising from a deficiency in the "design, planning, supervision, construction, or observation of construction of an improvement to real property" that are

8

brought more than ten years after the substantial completion of the construction. Ind. Code § 32-30-1-5. But the Indiana Supreme Court has declined to apply this statute to every contractor that installs or removes asbestos materials, recognizing that "not everything a contractor does constitutes an improvement to real property." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 645 (Ind. 2012). In particular, the Court ruled that "ordinary repairs" do not constitute improvements. But as CBS Corporation acknowledges in its brief, "Mr. Frankenberger's alleged exposure occurred during turbine maintenance work rather than during [turbine] installation." Because maintenance work is not an "improvement to real property," Indiana's construction repose statute does not bar Frankenberger's turbine-related claims.

**B.**

To bring an asbestos tort claim in Indiana, "a plaintiff . . . must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product." *Peerman v. Georgia-Pacific Corp.*, 35 F.3d 284, 287 (7th Cir. 1994).[1] "[T]his inference can be made only if it is shown that

---

[1] The District Court, following a thorough choice-of-law analysis, applied Illinois law because most of Frankenberger's alleged exposure occurred in Illinois. But our conclusion that Indiana's statutes of repose do not bar Frankenberger's claims removes the need for a choice-of-law analysis, as the substantive laws of Indiana and Illinois do not differ with respect to any other issue. Accordingly, we will apply the substantive law of Indiana, the state in which Frankenberger's claim was filed. *See Lutz v. DeMars*, 559

the defendant's product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a significant amount of asbestos dust and that the asbestos dust might have been inhaled by the plaintiff." *Id.*, *see also Asbestos Corp. Ltd. v. Akaiwa*, 872 N.E.2d 1095, 1098 (Ind. Ct. App. 2007) ("[A] plaintiff must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product.") (internal quotation and citation omitted).

Frankenberger alleges his exposure to asbestos was caused by two Westinghouse products: turbines and electrical switchgears. We will address the two claims in turn.

**1.**

With respect to the turbines, Frankenberger contends that when Westinghouse employees performed maintenance on the asbestos-containing thermal insulation inside the turbine, they created respirable asbestos dust that he inhaled. Frankenberger points to three main pieces of evidence to support this allegation: 1) his coworker Sperber's testimony that Westinghouse employees supervised the turbine maintenance; 2) Westinghouse's admission that insulation was not required to be asbestos-free until 1973; and 3) his expert's testimony that the insulation was saved during maintenance when possible. But this evidence does not support the inference that Frankenberger was exposed to a

N.E.2d 1194, 1196 n.1 (Ind. Ct. App. 1990) (citing E. Scoles and P. Hay, Conflict of Laws § 17.32 (1984 ed.)) ("[W]here there is no real conflict . . . the forum should apply forum law.").

10

significant amount of asbestos dust produced by Westinghouse's turbines.

The fact that Westinghouse employees supervised the turbine maintenance certainly provides support for Frankenberger's allegation that Westinghouse manufactured the turbines in the locations he worked. But it does not answer the more crucial question of whether the original, asbestos-containing insulation was present in the turbine during the maintenance. Nor does it answer the question of whether, if replacement insulation was present in the turbine, it was manufactured by Westinghouse. Similarly, the fact that Westinghouse insulation was not asbestos-free until 1973 means little in the absence of evidence that Westinghouse insulation was used in the specific turbines at issue here until 1973. Frankenberger provides no evidence that the Westinghouse turbines present in the facilities where he worked housed pre-1973 Westinghouse insulation that may have contained asbestos as opposed to replacement insulation from a different company.

According to Frankenberger, his expert's testimony that Westinghouse preserved the original insulation when possible demonstrates the original Westinghouse insulation remained in the turbines where he worked. But without evidence regarding how frequently insulation was able to be saved during maintenance, this testimony cannot support the inference that the original, asbestos-containing insulation remained in the turbines where he worked several years, and even decades, later. In the absence of evidence that the original Westinghouse insulation remained in the turbines where Frankenberger worked, or that replacement insulation placed in the turbines was manufactured by Westinghouse,

Frankenberger cannot support his assertion that his exposure to asbestos was caused by Westinghouse turbines.

**2.**

Unlike his turbine-related claim, Frankenberger's switchgear-related claim relies on specific evidence Westinghouse switchgears were likely to contain asbestos that resulted in respirable dust. Frankenberger points to three main pieces of evidence in support of that assertion: 1) his coworker Sperber's testimony that dust was blown out of the switchgears during maintenance; 2) Westinghouse's admission that some of its switchgears incorporated asbestos-containing parts; and 3) his expert's testimony that the switchgear's asbestos-containing parts would likely deteriorate and release asbestos dust during maintenance.

Despite this evidence, the District Court held that "no reasonable jury could conclude . . . that [Frankenberger] was exposed to respirable asbestos from Westinghouse switchgear . . . ." It found "no evidence that the dust [resulting from switchgear maintenance] was from the switchgear itself (for example, because the switchgear was deteriorating) as opposed to being external dust on the switchgear (i.e., not asbestos-containing dust)." But Frankenberger's expert testimony does provide such evidence. His expert testified that asbestos-containing parts in switchgear are likely to deteriorate and, when air pressure is applied, release asbestos dust into the air. While it is possible the dust Sperber observed being blown off the switchgear was external dust, it would not be unreasonable for a jury to conclude—relying on Frankenberger's expert—that the dust contained asbestos. Factual disputes such as this are best left to the jury.

12

## V.

For the foregoing reasons, we will affirm in part and reverse in part the judgment of the District Court, and remand for further proceedings consistent with this opinion.